## COMMUNIST PARTY OF THE UNITED STATES *v.* SUBVERSIVE ACTIVITIES CONTROL BOARD.

No. 48.   Argued November 17, 1955.—Decided April 30, 1956.

*John J. Abt* and *Joseph Forer* argued the cause and filed a brief for petitioner.

*Solicitor General Sobeloff* argued the cause for respondent. With him on the brief were *Assistant Attorney General Tompkins, Harold D. Koffsky, Philip R. Monahan* and *George R. Gallagher.*

Briefs of *amici curiae* urging reversal were filed by *Osmond K. Fraenkel, Thomas I. Emerson, David L. Weissman* and *Murray A. Gordon* for the National Lawyers Guild; *Edward J. Ennis* for the American Civil Liberties Union; and *Royal W. France* for Aydelotte et al.

*Herbert R. O'Conor, Julius Applebaum, William N. Bonner, Tracy E. Griffin, Clarence Manion, Paul W. Updegraff* and *Robert W. Upton* filed a brief for the American Bar Association, as *amicus curiae,* urging affirmance.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case is here to review the judgment of the Court of Appeals for the District of Columbia affirming an order of the Subversive Activities Control Board that petitioner register with the Attorney General as a "Communist-action" organization, as required by the Subversive Activities Control Act of 1950, Title I of the Internal Security Act of 1950, 64 Stat. 987. That Act sets forth a comprehensive plan for regulation of "Communist-action" organizations.[1] Section 2 of the Act describes a

---

[1] A "Communist-action" organization is defined in § 3 of the Act as:

"(a) any organization in the United States (other than a diplomatic representative or mission of a foreign government accredited

world Communist movement directed from abroad and designed to overthrow the Government of the United States by any means available, including violence. Section 7 requires all Communist-action organizations to register as such with the Attorney General. If the Attorney General has reason to believe that an organization, which has not registered, is a Communist-action organization, he is required by § 13 (a) to bring a proceeding to determine that fact before the Subversive Activities Control Board, a five-man board appointed by the President with the advice and consent of the Senate and created for the purpose of holding hearings and making such determinations. Section 13 (e) lays down certain standards for judgment by the Board.

If the Board finds that an organization is a Communist-action organization, it enters an order requiring the organization to register with the Attorney General. § 13 (g). Section 14 provides the right to file a petition for review of Board action in the Court of Appeals for the District of Columbia, with opportunity for review by this Court upon certiorari. Once an organization registers or there is outstanding a final order of the Board requiring it to register, several consequences follow with respect to the

---

as such by the Department of State) which (i) is substantially directed, dominated, or controlled by the foreign government or foreign organization controlling the world Communist movement referred to in section 2 of this title, and (ii) operates primarily to advance the objectives of such world Communist movement as referred to in section 2 of this title; and

"(b) any section, branch, fraction, or cell of any organization defined in subparagraph (a) of this paragraph which has not complied with the registration requirements of this title." 64 Stat., at 989.

The Act also defines and regulates "Communist-front" organizations, but these sections of the Act are not involved in the present proceeding.

organization and its members, but these need not now be detailed. See §§ 4, 5, 6, 7, 8, 10, 11, 15, 22, 25.

Proceeding under § 13 (a) of this statute, the Attorney General, on November 22, 1950, petitioned the Board for an order directing petitioner to register pursuant to § 7 of the Act. Petitioner sought unsuccessfully by numerous motions before the Board and by proceedings in the United States District Court for the District of Columbia—one case is reported at 96 F. Supp. 47—to attack the validity of, and to abort, the hearing. The hearing began on April 23, 1951, before three members of the Board, later reduced to two, sitting as a hearing panel, and it terminated on July 1, 1952. Proposed findings of fact and briefs were filed by both parties, and oral argument was held before the hearing panel in August 1952. In October 1952 the hearing panel issued a recommended decision that the Board order petitioner to register as a Communist-action organization. Exceptions to the panel's findings were filed by both parties, and oral argument was held before the Board in January 1953. The Board filed its report, which occupies 251 pages of the record in this case, on April 20, 1953.

In its report the Board found that there existed a world Communist movement, substantially as described in § 2 of the Act, organized and directed by a foreign government. The Board detailed the history of the Communist Party of the United States and its close relation to the world Communist movement. It then set forth illustrative evidence and made findings with respect to the statutory criteria of § 13 (e) of the Act, which required the Board to consider "the extent to which" the organization met them.[2] The Board found that the conditions

---

[2] "In determining whether any organization is a 'Communist-action organization,' the Board shall take into consideration—

"(1) the extent to which its policies are formulated and carried out and its activities performed, pursuant to directives or to effectuate

set forth in each of the paragraphs were applicable to petitioner. On the basis of these findings the Board concluded that petitioner was a Communist-action organization, as defined by § 3, and ordered it to register as such with the Attorney General.

Petitioner brought this order to the Court of Appeals for the District of Columbia for review. While the case was pending, it filed a motion, supported by affidavit,

---

the policies of the foreign government or foreign organization in which is vested, or under the domination or control of which is exercised, the direction and control of the world Communist movement referred to in section 2 of this title; and

"(2) the extent to which its views and policies do not deviate from those of such foreign government or foreign organization; and

"(3) the extent to which it receives financial or other aid, directly or indirectly, from or at the direction of such foreign government or foreign organization; and

"(4) the extent to which it sends members or representatives to any foreign country for instruction or training in the principles, policies, strategy, or tactics of such world Communist movement; and

"(5) the extent to which it reports to such foreign government or foreign organization or to its representatives; and

"(6) the extent to which its principal leaders or a substantial number of its members are subject to or recognize the disciplinary power of such foreign government or foreign organization or its representatives; and

"(7) the extent to which, for the purpose of concealing foreign direction, domination, or control, or of expediting or promoting its objectives, (i) it fails to disclose, or resists efforts to obtain information as to, its membership (by keeping membership lists in code, by instructing members to refuse to acknowledge membership, or by any other method); (ii) its members refuse to acknowledge membership therein; (iii) it fails to disclose, or resists efforts to obtain information as to, records other than membership lists; (iv) its meetings are secret; and (v) it otherwise operates on a secret basis; and

"(8) the extent to which its principal leaders or a substantial number of its members consider the allegiance they owe to the United States as subordinate to their obligations to such foreign government or foreign organization." 64 Stat., at 999–1000.

for leave to adduce additional evidence pursuant to § 14 (a) of the Act.[3] The basis of the motion was that the additional material evidence became available to the petitioner subsequent to the administrative proceeding and that this evidence would

> "establish that the testimony of three of the witnesses for the Attorney General, on which [the Board] relied extensively and heavily in making findings which are of key importance to the order now under review, was false. . . . In summary, this evidence will establish that Crouch, Johnson and Matusow, all professional informers heretofore employed by the Department of Justice as witnesses in numerous proceedings, have committed perjury, are completely untrustworthy and should be accorded no credence; that at least two of them are now being investigated for perjury by the Department of Justice, and that because their character as professional perjurors [sic] has now been conclusively and publicly demonstrated, the Attorney General has ceased to employ any of them as witnesses."

Petitioner listed a number of witnesses whom it proposed to call to substantiate its claim and also set forth a detailed affidavit in support of its allegations.

---

[3] Section 14 (a) of the Act provides:

". . . If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material, the court may order such additional evidence to be taken before the Board and to be adduced upon the proceeding in such manner and upon such terms and conditions as to the court may seem proper. The Board may modify its findings as to the facts, by reason of the additional evidence so taken, and it shall file such modified or new findings, which, if supported by the preponderance of the evidence shall be conclusive, and its recommendations, if any, with respect to action in the matter under consideration. . . ." 64 Stat., at 1001–1002.

The Government did not deny these allegations. It filed a "Memorandum in Opposition to Motion for Leave to Adduce Additional Evidence," signed by the General Counsel to the Board and by officials of the Department of Justice. The memorandum asserted that the hearing should not be reopened for the receipt of evidence merely questioning, as it claimed, the credibility of some witnesses, but not any fact at issue, and it maintained that the findings of the Board were amply supported by evidence apart from the testimony of the three witnesses sought to be discredited. On December 23, 1954, this motion was formally denied by the Court of Appeals without opinion. In its full opinion on the merits, filed the same day, however, the Court of Appeals supported its rejection of petitioner's motion:

> "The Party attacks the credibility of the witnesses presented by the Government. In this connection it stresses that some of these witnesses . . . were under charges of false swearing. Full opportunity for cross examination of these witnesses was afforded at the hearing before the Board, and full opportunity was also afforded for the presentation of rebuttal testimony. The evaluation of credibility is primarily a matter for the trier of the facts, and a reviewing court cannot disturb that evaluation unless a manifest error has been made. Moreover the testimony of the witnesses against whom charges are said to have been made was consistent with and supported by masses of other evidence. . . ." 96 U. S. App. D. C. 66, 100, 223 F. 2d 531, 565.

The Court of Appeals affirmed the order of the Board. It sustained § 13 (e) against the contention that its standards were vague and irrational. It held that the findings of the Board had been established by a preponderance of the evidence, except that it struck, as not being

supported by a preponderance of the evidence, the finding that the secret practices were undertaken for the purpose of promoting the objectives, and concealing the true nature, of petitioner; and it also struck the finding in connection with reporting to a foreign government because the record supported only a finding of reporting by Party leaders "upon occasion," not a finding which implied a constant, systematic reporting. The court, however, found that the Board's conclusion was supported by the basic findings which it had affirmed. With respect to petitioner's other attacks on the constitutional validity of the statute, the court found it necessary to consider some of the so-called "sanction" sections, §§ 5, 6, 10, 11, 22, and 25, as well as § 7, the registration section. It held that they were all constitutional and therefore affirmed the order of the Board.[4]

The challenge to the Act on which the order was based plainly raises constitutional questions appropriate for this Court's consideration, and so we brought the case here. 349 U. S. 943. At the threshold we are, however, confronted by a particular claim that the Court of Appeals erred in refusing to return the case to the Board for consideration of the new evidence proffered by petitioner's motion and affidavit. This non-constitutional issue must be met at the outset, because the case must be decided on a non-constitutional issue, if the record calls for it, without reaching constitutional problems. *Peters* v. *Hobby,* 349 U. S. 331.

In considering this non-constitutional issue raised by denial of petitioner's motion, we must avoid any intima-

---

[4] Judge Bazelon dissented on the ground that the registration provision violated the Fifth Amendment's privilege against self-incrimination because it compelled the person signing it to identify himself as a Communist Party functionary and because it compelled a listing of officers and members. 96 U. S. App. D. C., at 111, 223 F. 2d, at 576.

tion with respect to the other issues raised by petitioner. We do not so intimate by concluding that the testimony of the three witnesses, against whom the uncontested challenge of perjury was made, was not inconsequential in relation to the issues on which the Board had to pass. No doubt a large part of the record consisted of documentary evidence. However, not only was the human testimony significant but the documentary evidence was also linked to the activities of the petitioner and to the ultimate finding of the Board by human testimony, and such testimony was in part that of these three witnesses. The facts bearing on the issue are not in controversy. The direct testimony of witness Crouch occupied 387 pages of the typewritten transcript; that of Johnson, 163 pages; and that of Matusow, 118 pages. The annotated report of the Board, in which citations to the evidence were made to illustrate the support for its findings, contained 36 references to the testimony of Crouch, 25 references to the testimony of Johnson, and 24 references to the testimony of Matusow. These references were made in support of every finding under the eight criteria of § 13 (e) and it is also not to be assumed that the evidence given by these three witnesses played no role in the Board's findings of fact even when not specifically cited.[5]  Testimony, for example, directed toward proving

---

[5] In this connection the following statement of the Board in its report should be noted:

"In making our findings herein, we have considered and weighed all the evidence of record. In weighing [the Attorney General's] evidence, we have considered that certain of [his] witnesses fall into the category of 'informers' and we have scrutinized their testimony accordingly; we have considered and resolved the inconsistencies in the testimony of certain of [the Attorney General's] witnesses; we have considered the testimony of [the Attorney General's] witnesses against the background of their various organizational positions and activities in the CPUSA which afforded the

that the Communist Party of the United States was an agency utilized by a foreign government to undermine the loyalty of the armed forces, and to be in a position to paralyze shipping and prevent transportation of soldiers and war supplies through the Panama Canal, Hawaii, and the ports of San Francisco and New York in time of war, cannot be deemed insignificant in such a determination as that which the Board made in this proceeding.

This is a proceeding under an Act which Congress conceived necessary for "the security of the United States and to the existence of free American institutions . . . ." 64 Stat., at 989. The untainted administration of justice is certainly one of the most cherished aspects of our institutions. Its observance is one of our proudest boasts. This Court is charged with supervisory functions in relation to proceedings in the federal courts. See *McNabb* v. *United States,* 318 U. S. 332. Therefore, fastidious regard for the honor of the administration of justice requires the Court to make certain that the doing of justice be made so manifest that only irrational or perverse claims of its disregard can be asserted.

When uncontested challenge is made that a finding of subversive design by petitioner was in part the product of three perjurious witnesses, it does not remove the taint for a reviewing court to find that there is ample innocent testimony to support the Board's findings. If these witnesses in fact committed perjury in testifying in other cases on subject matter substantially like that of their testimony in the present proceedings, their testimony in this proceeding is inevitably discredited and the Board's determination must duly take this fact into account. We

sources of their knowledge; and we have had the benefit of the Panel's observation of their demeanor while testifying. Viewing these considerations in the light of the whole record, we find no basis for disregarding the substance of their testimony."

cannot pass upon a record containing such challenged testimony. We find it necessary to dispose of the case on the grounds we do, not in order to avoid a constitutional adjudication but because the fair administration of justice requires it. Since reversal is thus demanded, however, we do not reach the constitutional issues.

The basis for challenging the testimony was not in existence when the proceedings were concluded before the Board. Petitioner should therefore be given leave to make its allegations before the Board in a proceeding under § 14 (a) of the Act. The issue on which the case must be returned to the Board lies within a narrow compass and the Board has ample scope of discretion in passing upon petitioner's motion. The purpose of this remand, as is its reason, is to make certain that the Board bases its findings upon untainted evidence. To that end it may hold a hearing to ascertain the truth of petitioner's allegations, and if the testimony of the three witnesses is discredited, it must not leave that testimony part of the record. Alternatively, the Board may choose to assume the truth of petitioner's allegations and, without further hearing, expunge the testimony of these witnesses from the record. In either event, the Board must then reconsider its original determination in the light of the record as freed from the challenge that now beclouds it.

The case is reversed and remanded for proceedings in conformity with this opinion.

*Reversed and remanded.*

MR. JUSTICE CLARK, with whom MR. JUSTICE REED and MR. JUSTICE MINTON join, dissenting.

On November 22, 1950, the Attorney General petitioned the Subversive Activities Control Board for an order directing the Communist Party to register as a Communist-action organization, pursuant to the provisions of

the Internal Security Act of 1950. On April 20, 1953, the Board unanimously directed the Communist Party to register, finding "upon the overwhelming weight of the evidence . . . [the Communist Party] is substantially directed, dominated, and controlled by the Soviet Union . . . and . . . operates primarily to advance the objectives of such world Communist movement."

Nearly two years later, while the matter was before the Court of Appeals, the Communist Party filed a motion for leave to adduce additional evidence under § 14 (a) of the Internal Security Act. The "new evidence" attacked the credibility of witnesses Crouch, Johnson, and Matusow, 3 of the 22 witnesses for the Government. The motion charged that Crouch and Johnson had perjured themselves in their testimony in such other cases as *United States* v. *Kuzma, United States* v. *Bridges, In re Burck,* and *United States* v. *Weinberg.* It also charged that Matusow had recanted his testimony in Communist cases and was writing a book entitled "Blacklisting (or Blackmailing) Was My Business."

The Board opposed the motion, stating that the testimony of the three witnesses could "be ignored in toto and the ultimate determination . . . will remain amply supported by evidence both testimonial and documentary in character. . . . The [Communist Party] would still be found a Communist-action organization by overwhelming evidence."

The Court of Appeals denied the motion without opinion. However, in its opinion on the merits, the court pointed out that similar attacks had been made on the credibility of these as well as other witnesses before the Board. For example, in 194 pages of cross-examination before the Board, the Party charged that witness Johnson had committed perjury in *Pennsylvania* v. *Nelson, In re Yanish, In re Dmytryshyn, United States* v. *Eisler,* and in testimony before the Un-American Activities Commit-

tee.  The 112-page cross-examination of Matusow like-
wise was largely devoted to charges of perjury before
various boards and committees.  Crouch was cross-
examined for 810 pages, practically all of which was de-
voted to an attack on his credibility through his testimony
in other proceedings.  As the Court of Appeals concluded,
"Full opportunity for cross examination of these witnesses
was afforded at the hearing before the Board, and full
opportunity was also afforded for the presentation of
rebuttal testimony. . . .  Moreover the testimony of the
witnesses against whom charges are said to have been
made was consistent with and supported by masses of
other evidence."  96 U. S. App. D. C., at 100, 223 F. 2d,
at 565.  Not only did little of the cross-examination
relate to the evidence offered on direct, but the Party
introduced only three witnesses in rebuttal and none
refuted any specific testimony of the witnesses now
challenged.  The Court of Appeals affirmed the issuance
of the order by the Board.

The Communist Party brought the case here on April
13, 1955, by petition for certiorari.  The relative unimpor-
tance of this motion in the eyes of the Party is shown by
the fact that its 131-page petition devotes but 2 pages to
a discussion of this point.  The Party's brief devotes only
4½ of its 270 pages to the motion.  Still the Court now
says the Court of Appeals "erred" in its denial of the
motion and remands the case directly to the Board for it
to determine again the credibility of these three witnesses.
It refuses to pass on the important questions relating to
the constitutionality of the Internal Security Act of 1950,
a bulwark of the congressional program to combat the
menace of world Communism.  Believing that the Court
here disregards its plain responsibility and duty to decide
these important constitutional questions, I cannot join
in its action.

I have not found any case in the history of the Court where important constitutional issues have been avoided on such a pretext. Certainly *Peters* v. *Hobby*, 349 U. S. 331, is no authority for this action, since that case could be and was finally disposed of *without* reaching the constitutional issues. Here the case will be finally decided only *after* our decision on the constitutional questions. The action today is taken merely for delay and can result only in the Board reaffirming the action. In fact it so advised the Court of Appeals and that court found that all of the testimony of the questionable witnesses was supported by "masses of other evidence."

The allegations of the motion itself are entirely inadequate in that they point to no particular testimony before the Board as being false. There is no offer to disprove any testimony given, and no fact at issue in the proceeding is controverted. As to Crouch and Johnson, the motion merely cites additional cases in which it is alleged that their testimony was conflicting. These allegations are purely cumulative of the witnesses' cross-examination before the Board. With regard to Matusow, the motion mentions only newspaper reports and a press release referring to the statements of certain persons that Matusow had told them that he had lied. Ignoring the obvious inadequacy of this allegation, we may take judicial notice of the two cases where Matusow submitted affidavits stating that he had lied during the trial, *United States* v. *Jencks* and *United States* v. *Flynn*. In the *Jencks* case, the trial judge concluded that Matusow had been paid by a Communist source to recant and that his original testimony was true. The motion based entirely on Matusow's recantation was denied. This was affirmed by the Court of Appeals, *Jencks* v. *United States*, 226 F. 2d 540, cert. granted, 350 U. S. 980. In the *Flynn* case, 130 F. Supp. 412, the trial judge denied a similar motion as to 11 of the

13 defendants.  Two of the defendants in *Flynn* were granted a new trial only because Matusow had testified specifically to private conversations with these defendants which demonstrated their advocacy of the forcible overthrow of the Government.  Matusow's general testimony against other defendants was not disturbed.  These cases make it clear that, except for the special circumstances of two defendants in the *Flynn* case, the lower courts have not granted new trials in criminal proceedings despite the retraction by Matusow of specific sworn testimony given at the trials.  See also *United States* v. *Parker,* 103 F. 2d 857.[1]  But these were criminal cases where proof of guilt must be beyond a reasonable doubt.  Here, only a preponderance of the evidence is required.

Motions to adduce additional evidence under § 14 (a) are similar to motions to adduce evidence under § 10 (e) of the NLRA and the scope of our review is the same.  Such motions are addressed to the sound discretion of the Courts of Appeals.  In order to reverse we must find more than that the court below erred, because it "must not only have been in error but must also have abused its judicial discretion."  *Labor Board* v. *Indiana & M. Electric Co.,* 318 U. S. 9, 16.  In this case the motion itself was wholly inadequate and even if the testimony of all three challenged witnesses were omitted from the record the result could not have been different.  There is no reasonable basis on which we could say that the Court of Appeals has abused its discretion.

I abhor the use of perjured testimony as much as anyone, but we must recognize that never before have mere allegations of perjury, so flimsily supported, been considered grounds for reopening a proceeding or granting

[1] Despite the direct allegations of perjury in this case, this Court refused to review the denial of the motion for a new trial.  307 U. S. 642.

a new trial.[2]   The Communist Party makes no claim that the Government knowingly used false testimony, and it is far too realistic to contend that the Board's action will be any different on remand.   The only purpose of this procedural maneuver is to gain additional time before the order to register can become effective.   This proceeding has dragged out for many years now, and the function of the Board remains suspended and the congressional purpose frustrated at a most critical time in world history.

Ironically enough, we are returning the case to a Board whose very existence is challenged on constitutional grounds.   We are asking the Board to pass on the credibility of witnesses after we have refused to say whether it has the power to do so.   The constitutional questions are fairly presented here for our decision.   If all or any part of the Act is unconstitutional, it should be declared so on the record before us.   If not, the Nation is entitled to effective operation of the statute deemed to be of vital importance to its well-being at the time it was passed by the Congress.   I would decide the questions presented by this record.

---

[2] In at least three cases this Term we declined to review state criminal convictions in which much stronger allegations of perjury were made.   See *Reynolds* v. *Texas*, 350 U. S. 863; *Whitener* v. *South Carolina*, 350 U. S. 861; and *Coco* v. *Florida*, 350 U. S. 828.