**COMMUNIST PARTY OF THE UNITED STATES of America, Petitioner,**

v.

**SUBVERSIVE ACTIVITIES CONTROL BOARD, Respondent.**

**No. 11850.**

United States Court of Appeals District of Columbia Circuit.

Argued May 18, 1959.

Decided July 30, 1959.

Petition for Rehearing Denied August 27, 1959.

Certiorari Granted Feb. 5, 1960.

See 80 S.Ct. 502.

Bazelon, Circuit Judge, dissented in part.

Mr. John J. Abt, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of court, and Mr. Joseph Forer, Washington, D. C. for petitioner.

Mr. George R. Gallagher, Washington, D. C., Gen. Counsel of the Subversive Activities Control Board at the time of argument, with whom Mr. Frank R. Hunter, Jr., (now Gen. Counsel) and Mr. Leo M. Pellerzi, Asst. Gen. Counsel, Subversive Activities Control Board, Washington, D. C., and Messrs. Kevin T. Maroney and Philip R. Monahan, Attys., Dept. of Justice, were on the brief, for respondent.

Before PRETTYMAN, Chief Judge, and BAZELON and DANAHER, Circuit Judges.

PRETTYMAN, Chief Judge.

A Modified Report of the Subversive Activities Control Board following a second remand of this case is now before us for review. We affirmed the original report,[1] but the Supreme Court remanded for reconsideration in the light of allegations that the testimony of three witnesses was perjured.[2] The Board struck the testimony of those witnesses, reexamined its findings and issued a Modified Report. We reviewed that Modified Report and remanded the case for the production of reports made by the witness Markward to the F.B.I. upon certain matters as to which she had testified, and for reexamination of certain findings as to which an exhibit of the Government had been erroneously cited and quoted. Thereafter it developed that the F.B.I. had made recordings of statements made to its agents by the witness Budenz, a fact not known to Government counsel at the time of the earlier proceedings, and in a supplemental order we directed that this matter be included in the remand and that statements made by Budenz to the F.B.I. on certain matters be produced to the Party. The Board followed the instructions upon the remand, reexamined its findings and conclusions, made changes, and issued its Modified Report upon Second Remand, now before us.

The Party iterates all points of law made by it upon the original consideration of the case by us and repeated by it upon our second consideration. Upon those points we adhere to the views heretofore expressed by us. The Party also asserts, as it has consistently asserted in both of the prior considerations, that many of the findings of the Board are not supported by a preponderance of the evidence; and it emphasizes that the

present evidence in the record, reduced as it is by the striking of parts of the original evidence and by the conclusions of the Board now holding unacceptable certain other testimony, does not show a preponderance in support of the findings. We have examined the Modified Report in the light of these averments and think the findings are amply supported. The Party also makes specific points as applicable to the Report presently under review. We now examine those points.

## I.

■ In our original opinion in this matter we struck,[3] as not supported by a preponderance of the evidence, a finding respecting the purposes of the secret practices of the Party. The Board has let the finding remain in its Modified Report on Second Remand. The Party says the court must therefore again remand to the Board, for an administrative redetermination in the light of the striking of this finding. We do not see why we should do so. We did not find it necessary to reverse the order of the Board, or to remand, when we first struck the finding. No new evidence on the point has been added since then, and so we adhere to our first conclusion, but the necessity for remand is now no greater than it was. And we think the Board is entitled to adhere to its view on the point until our view of it has been tested in the Supreme Court.

## II.

■ Government's witness Gitlow was expelled from the Party in 1929. In about 1940 he delivered to the F.B.I. all documents in his possession respecting the Party. He dictated, over a period of time, memoranda explaining the documents. On the witness stand before the Board he identified and explained the documents. The Party moved for production of the 1940 memoranda. The

1. Communist Party of U. S. v. Subversive Act. Con. Bd., 96 U.S.App.D.C. 66, 223 F.2d 531 (1954).

2. 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003 (1956).

3. Supra note 1, 96 U.S.App.D.C. at pages 109–110, 223 F.2d at pages 574–575.

motion was denied. In our opinion of January 9, 1958,[4] our second opinion in the matter, being after the proceedings before the Board consequent to the remand by the Supreme Court, we held, in accordance with our reading of the opinion in Consolidated Edison Co. of New York v. National Labor Relations Board,[5] that the point was not available to the Party, since it had not pursued its remedy when its motion to produce was denied by the Board at the original hearing. That remedy was a motion to adduce additional evidence under Section 14(a) of the Act.[6] After our decision the Party made such a motion in this court. We denied it. The Party now argues the case must be remanded for receipt of the Gitlow memoranda, since, it says, it has remedied the procedural defect we found in its original position. But we think a litigant cannot cure procedural defects *nunc pro tunc* after an appellate court has passed upon his contentions in the matter. Litigants frequently must make tactical decisions in the course of a trial. Also they frequently make mistakes. But, after the resultant judgment has been reviewed upon appeal, they cannot unilaterally cure their mistakes by offering to take some missing step. So to do would be to prolong indefinitely almost all litigation. Analogies are unreliable support for reasoning, but we suggest an illustration. If a litigant in an ordinary lawsuit fails to make a motion, such as to suppress, or for a mistrial, or for a directed verdict, and the appellate court holds he was not entitled to certain relief because he had not asked for it by timely motion, he cannot thereafter proffer the motion and thus correct the defect and acquire a right to retrial. Failure of a trial tribunal to grant a motion not made is not reversible error, and appellate courts rarely remand for the correction of such omissions by parties litigant. No circumstance requiring such an extraordinary step by us is present here.

### III.

■ With its brief upon this appeal the Party filed a motion to adduce as additional evidence all statements filed by all witnesses who testified for the Attorney General before the Board. This is the third time this case has been here. The motion comes too late, and in any event it is not supported by any authority respecting the production of such documents. In the Jencks case [7] the Supreme Court quoted with approval from its opinion in Gordon v. United States,[8] disapproving fishing expeditions.

### IV.

■ Upon the remand after our opinion of January 9, 1958, the Board struck the testimony of the witness Budenz in respect to the Starobin letter and the Weiner conversation. The Party says it should have struck all of Budenz's testimony, upon either or both of two grounds, (1) all his testimony was tainted with perjury and (2) Budenz being ill after his statements to the F.B.I. on the two matters mentioned had been produced, the Party was denied the right to cross-examine him in the light of those statements. We agree with the Board on the point. Without elaborating, it is enough to say we have examined Budenz's statements again and think his testimony is not shown to have been false or tainted with perjury. It seems to us that the various accounts given by him upon different occasions, under different questioning, of the Starobin and Weiner incidents bear a solid similarity in essentials and differ no more than truthful accounts under such conditions may well differ—indeed, if truthful, do often

---

4. Communist Party of U. S. v. Subversive Act. Con. Bd., 102 U.S.App.D.C. 395, 254 F.2d 314 (1958).

5. 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

6. 64 Stat. 1001 (1950), as amended, 50 U.S.C.A. § 793(a).

7. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

8. 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953).

differ—in details, in expressions of speech, and in passing emphasis.

The disadvantage suffered by the Party, by reason of Budenz's illness and unavailability for cross-examination after the Starobin and Weiner documents (reports to the F.B.I.) had been produced, was cured by the Board's striking Budenz's testimony on those two matters. We see no necessity for striking more of his testimony on account of this shortening of his cross-examination. The Party says if it had been able to cross-examine in the light of the reports it might have been able to develop such a taint of perjury as to destroy all his testimony. We think not. Budenz had already been cross-examined extensively on these subjects. The possible conflicts between his testimony and his F.B.I. reports can readily be discerned, the reports having been produced. Those discrepancies are not such as to indicate perjury, much less the habit of perjury essential to be shown to taint all the witness's testimony. By securing a striking of the testimony on the two matters directly involved, the Party achieved all it could hope to achieve from these reports.

### V.

The Party says the Board should be required to strike all the testimony of the witness Markward, because her sworn statements concerning the Frankfeld incident and her testimony about her payments from the F.B.I. were false. The Board struck her testimony as to those two matters but declined to strike the rest of her evidence. We think the statements about the Frankfeld matter were not demonstrated to be false. She testified to her understanding of certain statements by one Thorez, by the Americans, Dennis and Foster, and by Frankfeld. In none of these statements were the words "not bear arms against the Soviet Union" used, but she gave that meaning to such expressions as "American Communists would oppose such 'an unjust, aggressive, imperialist war' and would work 'with all democratic forces' to bring that war to an end." To us the meaning she gave was a permissible inference from the face of the words.

The Party says Markward's testimony about the payments made to her by the F.B.I. was so false as to taint her entire testimony and to require that all of it be stricken. It was established from the beginning of this case that Markward was a paid informant for the Government. She characterized the payments she received as expense money, including within that term amounts expended by her for certain ordinary living expenses while she was working for the Government. She was vague in her recollection of exact amounts and dates, but she was specific in saying she received no salary and had no formal financial arrangements. The F.B.I. records of its payments to her were produced to the Party. Upon the basis of those accounts the Board held that Markward's testimony on the matter was "not acceptable", and it took this fact into account in evaluating her entire testimony. The Board concluded that Markward's testimony on all matters "should be assayed with caution." The Board also pointed out that "findings based upon her testimony are minimal; and the effect of her entire testimony upon the Board's Modified Report is inconsequential." We will not disturb these conclusions of the Board. The credibility of witnesses must be left largely to the trier of the facts; this is the rule as to both trial courts and administrative agencies. And in this connection it should be remarked that the definition of "expenses" is a vague and uncertain prescription. An expense under some circumstances is not an expense under others. A businessman's dinner at home or in his home town is not an expense; when he is on a business trip, it is one; and so on *ad infinitum*, as the casebooks readily show.

Moreover, in respect to the striking of both the Budenz testimony and the Markward testimony, we know of no rule that the trier of facts is required to disregard all the testimony of a witness whom he finds to have testified falsely in one respect. He may do so, but he is not re-

quired to do so. Instructions to juries on the point are commonplace in the courtroom. Such instructions are always that the jury *may*—never that it *must*—disregard the testimony of a witness whom it believes to have testified falsely on a material matter as to which he could not be mistaken. A rule of law compelling the trier of facts to disregard all the evidence of such a witness would not only be a revolutionary doctrine in our jurisprudence but a wholly undesirable doctrine.

## VI.

 By concentrating on segments of the evidence and expanding their importance by discussion, to the exclusion of all the rest of the evidence, the Party seeks to have us believe there are no other significant features in the record. But the facts beyond dispute are that there is a Communist Party in Europe, based upon Marxism-Leninism, and in power in Soviet Russia; that our present petitioner was for years a member of the Communist International, and its separation from that organization was not accompanied by a repudiation, either of objectives or of methods; that it is by its own choice named the Communist Party of the United States of America, a self-imposed description not to be ignored without reason; that it once forsook the line laid down by the Communist Party abroad but, upon being severely brought to task by a leading European Communist in an open letter to Communists, reorganized itself, even to the extent of expelling its erring leader, and went back to the line; and that, save for that period of waywardness, it has never differed from the program and policy of the Communist Party abroad and has always adhered to that program and policy even in sharp changes. These major characteristics in the facts cannot be overlooked.

Guilt by association is a concept we will not even entertain for consideration, but this proceeding is not to determine guilt. It is to ascertain characteristics, and association is surely one of the best-known sources of information about characteristics. Many proverbs attest to its common acceptance—not as proof of the commission of any certain act but as evidence of character and probable characteristics. Of course such *prima facie* indications can be readily and conclusively contradicted by facts. But an uncontradicted series of facts such as we have outlined as being in this record is admissible and acceptable evidence of characteristics, policy and program. One who attaches himself by intellectual affiliation to a cause, assumes the name of the cause, puts on the habiliments of the cause, and adheres to the course of the cause is not mistreated if it be inferred *prima facie* he is part of the cause. In the case at bar there is additional specific evidence. The preponderance of all the evidence supports the conclusion of the Board. Its order will be

Affirmed.

BAZELON, Circuit Judge (concurring in part and dissenting in part).

Notwithstanding my disagreement with the Court's two earlier opinions in this case and its orders of April 11, 1956 and June 16, 1958, I treat them as controlling in considering the points discussed by the majority in the present opinion.

As to Point I, I would reverse and remand because of the Board's violation of our original opinion of December 23, 1954, 96 U.S.App.D.C. 66, 109–110, 223 F.2d 531, 574–575. A finding which we there ordered stricken is now still relied on by the Board.

As to Points II, III and V (as to Markward), I concur only in the result reached by the majority.

As to Point IV, I would reverse and remand. By fault of the Government, the Party was precluded from obtaining use of Budenz's statement for purposes of cross-examining him while he was still available. Without such cross-examination the Party is denied its right to show the extent, if any, to which the rest of Budenz's testimony is tainted. If, upon the remand I would order, Budenz were not available, his entire testimony would have to be stricken.

In light of my disposition of Points I and IV, I do not reach consideration of Point VI—namely, whether the Board's order is supported by a preponderance of the evidence.