**RATTANCRAFT OF CALIFORNIA,**
Harper, Robinson & Co., et al.,
Appellants,

v.

The **UNITED STATES,** Appellee.

**A.R.D. 298; Reappraisement R67/1241.**

United States Customs Court,
Second Division, Appellate Term.

Jan. 13, 1972.

Glad & Tuttle, San Francisco, Cal.
(Edward N. Glad, San Francisco, Cal.,
of counsel), for appellants.

L. Patrick Gray, III, Asst. Atty. Gen.
(Velta A. Melnbrencis and Andrew P.
Vance, New York City, trial attorneys),
for appellee.

Before BOE, RAO, and NEWMAN, Judges.

RAO, Judge:

This application for review involves shipments of slat bamboo fencing (R67/1241), round bamboo fencing and bamboo poles (R67/522), and bamboo floor screens (R67/523) exported from Taiwan during the period from December 4, 1964 through April 9, 1966. All of the merchandise was appraised at the invoice unit values plus items marked "X" (inland freight and shipping charges).

The parties are in agreement that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement, but appellants claim that the items marked "X" are not properly part of the export value of the within merchandise.

■ Since the appraisements herein were stated in terms of ex-factory prices plus the disputed charges, they are separable and the challenging party may rely upon the presumption of correctness as to all the elements not in controversy. United States v. Chadwick-Miller Importers, Inc., et al., 54 CCPA 93, C.A.D. 914 (1967); United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929 (1967); United States v. Pan American Import Corp., et al., C.A.D. 993, 428 F.2d 848, 57 CCPA 134 (1970). However, it must be established that the merchandise was freely sold or offered for sale to all purchasers on an ex-factory basis. In United States v. Pan American Import Corp., et al., *supra*, the court pointed out (428 F.2d p. 852, p. 138):

> * * * where a separable appraisement is involved, once an importer has shown that the merchandise was freely sold or offered for sale to *all* purchasers, in the principal markets, in the usual wholesale quantities, on an *ex-factory* basis, then the separability rule will give rise to a pre-

sumption that the ex-factory *price* which the appraiser found was *the* price at which the merchandise was freely sold or offered to all. [Emphasis quoted.]

In the instant case, the trial judge found that the plaintiffs had failed to prove that the merchandise was freely offered for sale at a price which did not include the separable, disputed charges. Rattancraft of Calif., Harper, Robinson & Co. et al. v. United States, 66 Cust.Ct. 538, R.D. 11737 (1971).

In their application for review, appellants assign as error, *inter alia,* the trial court's finding and holding that plaintiffs have failed to prove that the merchandise was freely offered at a price which did not include the items marked "X"; that the affidavits of the manufacturers lack the detail and persuasiveness which the circumstances of the case demand, and that the hearsay statements in exhibit A lessen the impact and the weight to be given the affidavits of the manufacturers.

Exhibit A is a report of the Government's witness, Perry J. Spanos, who, as Pericles John Spanos, was subsequently convicted of the offense of theft of government property and of converting the property of another by an officer or employee of the United States.

It appears from the invoices that the merchandise covered by R67/1241 was sold by Tai Hok Hong of Taichung, Taiwan, that covered by R67/522 by Ming Ta Company of Chu Nan Chen, Taiwan, and that covered by R67/523 by Globe Products Co., Ltd. of Taichung, Taiwan.

David L. More, president of Rattancraft of California, testified that his firm had employed Kwong Hop & Company, as its agent in Taiwan and that the above named sellers had been recommended by said agent. The witness had visited the Globe Products factory but did not know whether he had visited the others. Orders were given to Kwong Hop by cable and the latter placed them with different factories, and then shipped the merchandise. Kwong Hop

sent the witness ex-factory prices, the f. o. b. cost, including freight and charges to the harbor, and the c. & f. cost. According to the witness, his firm purchased at ex-factory prices, not f. o. b., although his recollection of the purchases from Ming Ta was uncertain. He said that Kwong Hop was instructed to place orders at ex-factory prices and take delivery at the factory. Rattancraft paid the inland freight and shipping charges through Kwong Hop. Letters of credit were made out to Kwong Hop, usually for the total c. & f. costs and sometimes on the basis of f. o. b. cost. In some cases Kwong Hop endorsed the letter of credit to the manufacturer. The witness did not know the exact charges for freight and shipping, but said they were in proportion to the weight and size of the shipments.

In addition to Mr. More's testimony, there were received in evidence affidavits of C. K. Chang, manager of Tai Hok Hong, Taichung (exhibit 1); of B. S. Lin, manager of Ming Ta Company of Miao Li Hsien (exhibit 2); and F. M. Lin of Globe Products Co., Ltd., Taichung (exhibit 3).

In exhibit 1, it is stated:

* * * That the firm of TAI HOK HONG manufactured and sold for export Seagrass Mats, Sisal Mats and Bamboo-ware and as the manager I personally participated in the prices and selling practices of the firm and therefore, I was personally familiar in the manner in which the firm sold its merchandise for exportation to the United States, including merchandise sold to Rattancraft of California.

That the firm offered and sold its merchandise for exportation either at an ex-factory price or at an F.O.B. vessel price depending on the wishes of the buyer.

That in selling to Rattancraft of California, the delivery was made to their agent at the factory.

That the only difference between the ex-factory prices and the F.O.B. vessel prices was the inland freight and shipping charges which my firm included in the latter price, because only when sales were made F.O.B. vessel, had my firm to pay for such charges.

The other two affidavits contain similar statements. No allegations were made that the statements were obtained from a review of the company books and records prepared and maintained by the affiant or kept under his supervision. No lists of sales were appended nor was there any reference to any specific sales by date, order number, type of merchandise, or otherwise.

The special customs invoice in R67/522 shows the seller as Ming Ta Company of Chu Nan Chen, but the affidavit (exhibit 2) refers to the company as Ming Ta Company of Miao Li Hsien. No evidence was presented to show whether the same company was involved.

In support of their claim that this evidence is sufficient to establish a *prima facie* case, appellants cite Standard Brands Paint Co., Inc. v. United States, 59 Cust.Ct. 616, R.D. 11345 (1967); Standard Brands Paint Co., Inc., v. United States, 62 Cust.Ct. 808, R.D. 11628, 295 F.Supp. 1096 (1969), and Rattancraft of California et al. v. United States, 64 Cust.Ct. 749, R.D. 11711 (1970), application for review pending. In those cases the evidence presented was uncontradicted. Furthermore, in the first *Standard Brands* case, there was *testimony* by the export manager of the seller, thus affording the defendant an opportunity to cross-examine. In that situation, conclusory statements are acceptable. Kobe Import Co. v. United States, 43 CCPA 136, C.A.D. 620 (1956). The affidavit in the second *Standard Brands* case contained a list of typical sales and more documentary evidence than was presented in the instant case.

In Norco Sales Company v. United States, 65 Cust.Ct. 778, R.D. 11732, 319 F.Supp. 1399 (1970), the court held that an affidavit based upon the personal knowledge of a well-qualified witness was persuasive in showing that all purchasers were free to buy at ex-factory prices in the same manner as the plaintiff. The

court emphasized the fact "shown by the affidavit that Lobster requires those of its purchasers who choose to buy on an ex-go-down, f. o. b. or c. i. f. basis rather than on an ex-factory basis to reimburse it specifically for all charges in excess of the ex-factory price that it incurs in getting the merchandise to the purchaser's selected place of delivery."

In another recent case, Haruta & Co., Inc. v. United States, 65 Cust.Ct. 735, R.D. 11724 (1970), the court pointed out that testimony that the plaintiff purchased at ex-factory prices was not probative of the more basic issue of whether the articles were freely sold to all purchasers on an ex-factory basis. The court gave little, if any weight, to 31 affidavits of manufacturers, run off the same form with blank spaces to be filled in by the affiant, which contained statements that all sales to plaintiff were on an ex-factory basis and that at all times the merchandise was freely available on the same basis to anyone wishing to buy. The court noted that there was no reference in the affidavits to the dates of sales, or the merchandise sold, and that there were no commercial invoices to corroborate that, on the dates of exportation, such or similar merchandise was freely offered or sold to all purchasers on an ex-factory basis.

In the instant case, as appellants admit, there is nothing more than the bare statements of the affiants that the merchandise was freely sold or offered for sale to all purchasers on an ex-factory basis. While courts are disposed to adopt a lenient view toward the quantum of proof requisite to establish dutiable value on the basis of ex-factory prices exclusive of disputed charges (Hub Floral Manufacturing Company v. United States, 62 Cust.Ct. 979, 984–985, A.R.D. 249, 296 F.Supp. 355 (1969), aff'd *sub. nom.* United States v. Pan American Import Corp. et al., *supra*), unsupported statements of affiants may become insufficient when doubt is cast on the truth or accuracy thereof.

Here, the trial judge held that in view of the report of Mr. Spanos (exhibit A),

the quantum of proof presented by the plaintiffs was inadequate.

According to Mr. Spanos' report, dated November 22, 1967, he interviewed Mr. H. H. Peng, manager of Kwong Hop & Co., Ltd., and obtained the following information, which, for convenient reference, we divide into two parts:

1. * * * Mr. Peng explained that Kwong Hop & Co. simply (1) forwards offers to Rattancraft of California on behalf of the factory (2) transmits orders received to the factory and (3) when letters of credit are received they are assigned *in toto* to Globe Products Co. Offers are quoted always in ex factory, FOB, and C & F basis; however, all sales are consumated [sic] invariably at C & F. * * * Mr. Peng continued that Kwong Hop acts as the exclusive selling agent of Globe Products.

2. Upon close questioning Mr. Peng about the extremely high amounts shown as "inland charges" on the Special Customs Invoices, Mr. Peng admitted "in confidence" that such charges are always overstated. Mr. Peng explained that in the "inland charges" are included amounts of money paid as bribes to certain admeasurers and surveyors at the port of Keelung for understating (for purposes of determining the cost of ocean freight) the cubic footage of the bales containing the bamboo fencing, as well as other expenses. * * * Mr. Peng said the main reason for selling the fencing always on C & F basis is to reduce the cost of freight since "such arrangements" cannot be made on "freight-collect" shipments. When I asked Mr. Peng whether Mr. More of Rattancraft of California was aware of this matter, Mr. Peng replied that Mr. More "is aware of the manipulation but may not know all the details".

The first part of the report, quoted above, throws doubt on the statements of

F. M. Lin, manager of Globe Products Co., Ltd., that his firm sold to Rattancraft on an ex-factory basis and that his firm sold to all purchasers either at the factory or on board the vessel, whichever way the purchaser wished. It also throws doubt on the relationship of Kwong Hop to the purchaser. Was Kwong Hop the *bona fide* buying agent of Rattancraft or was it the selling agent of the manufacturer? Cf. Bushnell International, Inc. v. United States, 67 Cust. Ct. ——, A.R.D. 297, 331 F.Supp. 1378 (1971), appeal pending.

In view of the second part of the report, the trial court held that the allegation of manipulation and bribery affected the weight to be given the proof presented on the issue of ex-factory prices. Appellee claims it is part of the appellants' burden to explain the nature of the disputed charges. As we see it, the amount of the shipping charges is not relevant here, except to the extent that they reflect on the credibility to be given to the evidence that the merchandise was freely sold to all purchasers at the ex-factory prices claimed.

■ Evidence is to be assessed in practical terms, considering such factors as completeness, adequacy of bases, and possible motives to deceive. Mannesmann-Meer, Inc. v. United States, 58 CCPA 6, C.A.D. 995 (1970). Here, it may be inferred, assuming Mr. Peng's statements are true, that if bribes are paid in order to have the cubic footage misstated so as to deceive the shipping company, the method of sale (ex-factory or f. o. b.) might also be misstated to deceive customs officials. Mr. More was not asked on rebuttal whether he knew of the manipulation, but only whether he had any reason to question the accuracy of the charges, as to which he replied that he did not. Moreover, it appears not only from the testimony of Mr. Spanos but from the invoices themselves that the inland charges were high. In reappraisement R67/1241, they amounted to $562.30 or 39 percent of the purchase price; in reappraisement R67/522 to $112.70 or 23 percent, and

in reappraisement R67/523 to $54.80 or 13 percent.

Accordingly, on the basis of the record presented to the trial court, we would affirm.

However, we are confronted with the fact that, subsequent to that decision, the Government witness, Mr. Spanos, was convicted of theft of government property and we must determine whether that fact requires a different disposition of the case.

Had Mr. Spanos been convicted prior to the trial, the plaintiffs would have had the right to attempt to impeach his credibility by showing his conviction of a crime involving moral turpitude. Christianson v. United States, 8th Cir., 226 F.2d 646, 655 (1955), cert. den. 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859 (1956); Bendelow v. United States, 5th Cir., 418 F.2d 42 (1969); Pinkney v. United States, 5th Cir., 380 F.2d 882 (1967), cert. den. 390 U.S. 908, 88 S.Ct. 831, 19 L.Ed.2d 876 (1968); United States v. Hildreth, 4th Cir., 387 F.2d 328 (1967).

The difficulty here is that the conviction did not occur until later and plaintiffs had no opportunity to impeach him. Now the court has before it a certified copy of the judgment of conviction and no one is claiming that the witness was not in fact convicted. There is no hard and fast rule that courts may or may not take judicial notice of proceedings and records of other courts. Cyclopedia of Federal Procedure, third edition, vol. 8, sec. 26.217; 29 Am.Jur. 2d, Evidence §§ 58, 59; Funk v. Commissioner of Internal Revenue, 3rd Cir., 163 F.2d 796 (1947); Wells v. United States, 318 U.S. 257, 63 S.Ct. 582, 87 L.Ed. 746 (1943); Lowe v. McDonald, 9th, 221 F.2d 228 (1955); A. G. Reeves Steel Const. Co. v. Weiss, 6th, 119 F.2d 472, cert. den. 314 U.S. 677 (1941); Oughton v. United States, 9th, 215 F.2d 578 (1954), cert. den. 352 U.S. 975, 77 S.Ct. 373, 1 L.Ed. 2d 328 (1957); Winslow v. United States, 9th, 216 F.2d 912 (1954); Chandler Laboratories, Inc. v. Smith, D.C., 88 F. Supp. 583 (1950), motion to vacate den. D.C., 94 F.Supp. 248 (1950); · United

States v. Merrick Sponsor Corp., 2nd, 421 F.2d 1076 (1970).

In the *Funk* case, the court stated (163 F.2d pp. 800–801):

> \* \* \* It is stated to be the general rule that courts will not travel outside a record in order to notice proceedings in another case, even between the same parties in the same court, unless the proceedings are put in evidence. \* \* However, exceptions are admitted, and it may indeed be more appropriate to say that the extent to which the doctrine will be applied depends to a large degree upon considerations of expediency and justice under the particular circumstances of a case, as well as upon what it is that a court is asked to notice. See 9 Wigmore on Evidence (3rd ed. 1940) § 2579.

While neither the research of counsel nor that of the court has produced a case on all fours with this one, in some unusual situations, the courts have recognized the existence of a subsequent conviction or of subsequent facts indicating that the testimony might be false and have adopted different solutions depending upon the circumstances. State of Arizona v. Owen, 101 Ariz. 156, 416 P.2d 589 (1966), cert. den. 388 U.S. 915, 87 S.Ct. 2128, 18 L.Ed.2d 1356 (1967); Communist Party of the United States v. Subversive Activities Control Board, 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003 (1956); Mesarosh et al. v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); United States v. Aguillar, 387 F.2d 625 (1967).

In State of Arizona v. Owen, *supra,* a witness had testified at the first trial and his testimony was introduced in evidence at the second trial of the same defendant. The prosecutor was allowed to introduce into evidence a certified copy of the conviction of that witness subsequent to first trial. The court held it was not error, stating (416 P.2d p. 591):

> \* \* \* If the witness had been present and testified at the subsequent trial, his testimony would have been subject to the same impeachment process. Thus, no sound policy reason can be found for refusing the admission of a certified copy of a judgment and conviction for a felony to impeach the prior testimony of the witness which was introduced in evidence.

In the *Communist Party* case, the Subversive Activities Control Board had found the petitioner was a Communist-action organization and ordered it to register. Petitioner appealed and then filed a motion to adduce additional evidence showing that the testimony of three Government witnesses was false and that they had committed perjury. The Government did not deny the allegations but asserted that the case should not be reopened for the receipt of evidence merely questioning the credibility of some witnesses. The court held that if the witnesses had committed perjury in testifying in other cases, their testimony in this one was inevitably discredited and the Board's determination must take this into account. It noted that the basis for challenging the testimony was not in existence when the proceedings were concluded before the Board and remanded the case to the Board in order that the Board might determine the truth of petitioner's allegations and reconsider its original determination, in the light of a record freed from the challenge beclouding it.

In the *Mesarosh* case the petitioners had been convicted of conspiring to violate the Smith Act. While review was pending, the Solicitor General moved that the case be remanded for a determination of the credibility of a Government witness whose truthfulness in other proceedings it had found reason to doubt. The court held that the disclosures of the Solicitor General had wholly discredited the witness and that the "dignity of the United States Government will not permit the conviction of any person on tainted testimony." It therefore reversed the judgments below with direction to grant the petitioners a new trial.

In United States v. Aguillar, *supra,* the defendant was convicted on January 4, 1967. On appeal, he claimed that the case should be reversed and remanded be-

cause one of the witnesses had been arrested on June 6, 1967 on a charge of possessing counterfeit money. The court noted that the discovery of new evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the granting of a new trial. It held further that the charge without a conviction could not have been used to impeach the witness and that "the counterfeiting offense happened long after his testimony at Aguillar's trial, and there is no claim that the government then had knowledge of anything to throw doubt on the accuracy of the testimony."

█ In the instant case the trial judge laid great stress on the statements made in the report of Mr. Spanos and it appears that in the absence of the report, his decision might have been different. Now, the credibility of Mr. Spanos has been put into question by his conviction of a crime involving moral turpitude. In the interests of justice, this fact should be considered in determining the weight to be given to his testimony and his report. Such consideration is within the province of the trier of the facts. 98 C.J.S. Witnesses § 537, p. 473.

█ The jurisdiction of the Customs Court on applications for review is appellate only. It has power to review the findings of the trial judge, to affirm, reverse, or modify his decision, or to remand the case for further proceedings. 28 U.S.C. 2636(b) prior to its amendment by the Customs Courts Act of 1970. The appellate term may not proceed *de novo* and consider evidence not before the trial court or which the latter had excluded. United States v. Titan Shipping Co., Inc. (E.J.Fay), 25 CCPA 403, T.D. 49485 (1938). In that case the trial court had excluded an affidavit and the appellate term not only held that it should have

been admitted, but considered the case on the merits, treating the affidavit as part of the evidence. The court of appeals held that the affidavit was not in evidence in the case and that the appellate term had exceeded its authority by attempting to add such evidence to the record, which was in effect an amendment of the record, and by then proceeding to decide the case upon such amended record. It said that the case should have been remanded for a new trial or with directions to the trial court to admit the affidavit into evidence and make new findings after weighing said affidavit, together with the other evidence in the case. See also D. C. Andrews International v. United States, 59 CCPA ——, C.A.D. 1033 (1971), where the court noted that the appellate term could do anything the trial judge could have done except expand the record.

While it has been held that for the limited purpose of impeaching the credibility of a witness, the appellate term may properly consider the effect of inconsistent statements in a consular invoice (part of the official file, though not offered in evidence), and an affidavit (Dominick Butti v. United States, 49 CCPA 1, C.A.D. 778 (1961)), in the instant case the conviction is neither in evidence nor is it part of the official file. While we may judicially notice that it exists, its weight is for the trier of facts.

Accordingly, we remand this case to the trial court with directions to receive evidence of the conviction of the witness, Perry J. Spanos, also known as Pericles John Spanos, and to reconsider its original determination and make new findings after weighing the testimony and report of the witness in the light of said conviction.

Judgment will be entered accordingly.

NEWMAN, J., not participating.