## New Brighton Borough Sanitary Authority v. Local 115

*E. Earl Autenreith* and *Charles F. Bowers, Jr.,* for plaintiffs.

*Alfred Pelaez,* for defendants.

ROWLEY, J., March 8, 1973.—Plaintiffs, New Brighton Borough Sanitary Authority (authority) and the Borough of New Brighton (borough), filed, on March 5, 1973, an action in equity seeking to enjoin a strike by defendants against plaintiffs' sewage treatment plant. A hearing was held on March 6, 1973, on plaintiffs' complaint. Based upon the evidence pre-

sented at the hearing, we have concluded that plaintiffs' request must be granted.

Plaintiffs own and operate a primary sewage treatment plant in the Borough of New Brighton. The plant serves between 6,000 and 13,000 residents in the borough and the Townships of Pulaski and Daugherty. The effluent from the plant is discharged into the waters of the Beaver River. On September 5, 1957, sewerage permit 8974-S was issued to plaintiffs by the Sanitary Water Board of Pennsylvania. Under that permit, the discharge into the river is permitted under certain conditions which include appropriate treatment of all sewage passing through the system and operation of the plant by a certified operator.

Defendant, Local 115 United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (Local 115), is the exclusive bargaining representative of the borough's employes. Defendants, Joseph Kalbaugh and Kenneth J. Watson, are members of Local 115 and are the borough employes who operate the sewage treatment plant. Defendant, William F. Giles, is the business agent of Local 115.

On January 22, 1973, the borough employes, including defendants herein, commenced a strike against plaintiff borough. Before the strike was called, the parties had completely utilized and exhausted the collective bargaining processes provided in the Public Employe Relations Act of July 23, 1970, P. L. 563, 43 PS §1101.201. As a result of the strike, the sewage treatment plant has been shut down and is not operating. Since the strike, plaintiffs have been discharging untreated sewage into the Beaver River in violation of the Clean Streams Law of June 22, 1937, P. L. 1987, 35 PS §691.1, their sewerage permit and the rules and

regulations of the Department of Environmental Resources.

On February 5, 1973, the Pennsylvania Department of Environmental Resources issued an order pursuant to the Clean Streams Law, directing plaintiffs to begin operation of the sewage treatment plant within five days. The plant was not started, however, and the discharge of untreated sewage continued. On February 23, 1973, the Department of Environmental Resources instituted an action in equity against the borough and the authority in this court at no. 330 of 1973. In that action, the borough and the authority were ordered and directed, on March 1, 1973, to commence operation of the plant within 24 hours. Following the issuance of that order, defendants in this case were unwilling to voluntarily return to work and commence operating the sewage treatment plant. As a result, plaintiffs instituted this action pursuant to section 1003 of the Public Employe Relations Act, 43 PS §1101.1003.[1] Section 1003 provides, inter alia, that a strike by public employes, which occurs after the collective bargaining process has been exhausted, shall not be prohibited "unless or until such a strike creates a clear and present danger or threat to the health, safety or welfare of the public." In such cases, the employer has been directed by the legislature to initiate an action for equitable relief. Plaintiffs contend that the continued discharge of untreated sewage into the Beaver River constitutes a clear and present danger to the health, safety and welfare of the public.

Defendants argue first, that in order to be eligible

---

[1] Plaintiffs seek to have the strike enjoined only insofar as it affects the sewage treatment plant. They do *not* seek to enjoin the strike insofar as it affects other borough operations or employes.

for the relief sought in this case, the public employer is required to show that it has exhausted *all* means of obtaining outside or nonunion employes to perform the duties in question and that it is absolutely necessary that the striking employes involved perform the necessary operations. No authority has been cited for this proposition and we do not understand such to be the law. However, the record in this case discloses that plaintiffs did make reasonable efforts to obtain outside help to operate the sewage treatment plant but have been unable to do so. There are no other borough employes either qualified or willing to operate the plant even though requested to do so by the borough manager. The manager also requested the firm of consulting engineers employed by the borough to find or furnish an operator. This request was unsuccessful. An operator of a similar plant in a nearby community was requested to help but he refused. A retired borough employe was requested to return to work but declined. Generally speaking, the attitude of those contacted has been that they are not willing to become involved in the labor dispute existing in the Borough of New Brighton by crossing or disregarding picket lines that might be established by defendants. It is also to be noted that it is not everyone who is capable or qualified to operate the sewage treatment plant. The State's regulations require that operators be certified after an appropriate training program. Also in this connection it is important to note that defendant, William F. Giles, the union business agent, testified that in the event plaintiffs attempted to obtain outside or nonunion help to operate the plant, he would use all legal and legitimate means to see that that did not occur. He testified that such means would include lawful picketing and the use of lawful persuasion to dissuade anyone from attempting to enter

or operate the plant. Under all of these circumstances, we are satisfied that any burden which plaintiffs might have to obtain outside help or to operate the plant without defendants, Kalbaugh and Watson, has been more than adequately met.

Secondly, defendants argue that there has not been a sufficient showing that the strike has created a clear and present danger or threat to the health, safety or welfare of the public. In enacting the Public Employes Relations Act, the legislature attempted to balance the respective rights and duties of public employes, public employers *and the public at large.* In section 101, 43 PS §1101.101, the legislature declared it to be the public policy of the Commonwealth that the right of the citizens of the Commonwealth "to keep inviolate the guarantees for their health, safety and welfare" should be *paramount* to all other rights extended by the act.

In Armstrong School District v. Armstrong Education Association, 5 Comm. Ct. 378 (1972), Judge Blatt, speaking for the court, addressed herself to the matter of a "clear and present" danger. At pages 383 and 384, she wrote:

"The determination of what is a 'clear and present' danger under Act No. 195 presents some problems. The phrase has almost invariably been used heretofore in cases involving government interference with First Amendment rights. See, Dennis v. United States, 341 U.S. 494, 71 S. Ct. 857, 95 L. Ed. 1137 (1951); Terminiello v. City of Chicago, 337 U.S. 1, 69 S. Ct. 894, 93 L. Ed. 1131 (1949); Schenk v. United States, 249 U. S. 47, 39 S. Ct. 247, 63 L. Ed. 470 (1919). A definition of the term, however, which seems to be applicable here was stated in Communist Party of the United States v. Subversive Activities Control Board, 223 F.2d 531 (D. C. Cir. 1954), reversed on other grounds, 351 U. S.

115, 76 S. Ct. 663, 100 L. Ed. 1003 (1956), as follows: 'The "clear" in that epigram is not limited to a threat indubitably etched in every microscopic detail. It includes that which is not speculative but real, not imagined but actual. The "present" in the epigram is not restricted to the climactically imminent. It includes that which exists as contrasted with that which does not yet exist and that which has ceased to exist.' 223 F.2d at 544. In this light, the determination of whether or not a strike presents a clear and present danger to the health, safety or welfare of the public must, therefore, require the court to find that the danger or threat is real or actual and that a strong likelihood exists that it will occur. Additionally, it seems to us that the 'danger' or 'threat' concerned must not be one which is normally incident to a strike by public employees. By enacting Act No. 195 which authorizes such strikes, the Legislature may be understood to have indicated its willingness to accept certain inconveniences, for such are inevitable, but it obviously intended to draw the line at those which pose a danger to the public health, safety or welfare."

We are of the opinion, in this case, that there can be no question but that the threat to the health of the community is "present." Certainly, it is not denied that plaintiffs are discharging untreated, raw sewage into the Beaver River, and have been for 45 days. We are likewise of the same opinion that the threat is "clear." It is a real and actual threat, not one that is only speculative or imaginary. John W. Davidson, an environmental protection specialist with the Department of Environmental Resources of the Commonwealth, testified at the hearing that a sample taken of the effluent from the plant on January 29, 1973, contained 240,000 fecal coliforms per 100 milliliter of

sample. In a second sample taken on February 13, 1973, he found 2,400,000 fecal coliforms per 100 milliliter of sample. Under present State regulations, the highest count permitted is 1,000 fecal coliforms per 100 milliliter sample. In Mr. Davidson's opinion, there was a "good probability" or a "sure possibility" that these coliforms, or some of them, contained pathogenic organisms which are disease producing. The Beaver River, in the area of the discharge, is used for fishing and recreational purposes. In addition, approximately 13 miles downstream, on the Ohio River, the Borough of Midland utilizes the water from the river as a source of drinking water. Defendants argue that none of the residents or officials of Midland have complained about the condition of their water source. However, we do not believe that the legislature intended that the threat must become a reality before action can be taken to protect the health and safety of the public. If the threat to the health and safety of the citizens in the area of the discharge and further downstream is present, we must take action to prevent that threat from ripening into a reality. This is in accordance with the expressed legislature policy that the guarantee of protection of the public's health, safety and welfare must be paramount. In addition, it is unquestioned that the discharge of untreated sewage, by plaintiffs, into the Beaver River is in direct violation of their permit, the regulations of the Department of Environmental Resources, and the Clean Streams Law enacted by the legislature. In section 4 of the Clean Streams Law, 35 PS §691.4, the legislature declared that "Clean unpolluted streams are *absolutely essential*" and that "Clean unpolluted water is *absolutely essential*" to the welfare of Pennsylvania and its residents. It is pointed out that the

objective of that act was not only to prevent further pollution but to reclaim and restore to a clean, unpolluted condition the streams and waterways of Pennsylvania. It seems clear to us, therefore, that the continued discharge of untreated raw sewage into the Commonwealth's waterways clearly present a present and clear threat to the welfare of the citizens and residents of the Commonwealth, in direct contradiction to the mandates of the Clear Streams Law.

For these reasons, we are of the opinion that the strike by defendants must be enjoined insofar as it affects the operation of plaintiffs' sewage treatment plant.

For these reasons, we make the following

## ORDER

Now, March 8, 1973, it is hereby ordered and directed that defendant, Local 115, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, its officers, agents and employes, and defendants, William F. Giles, Joseph Kalbaugh and Kenneth J. Watson, be and they hereby are enjoined from continuing the strike or work stoppage against the Borough of New Brighton and the New Brighton Borough Sanitary Authority, insofar as the strike relates to or has any connection with plaintiffs' sewage treatment plant and the sewage treatment system in the Borough of New Brighton. It is further directed that defendants, Joseph Kalbaugh and Kenneth J. Watson, return to the full, faithful and proper performance of the duties of their employment with the Borough of New Brighton in its sewage treatment plant and its sewage treatment system.