(R.D. 11762)

AGRICOLAS DE MEXICO, S. DE R. L. DE C. V. *v.* UNITED STATES

(Decided on remand February 16, 1972)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.

*L. Patrick Gray III*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

WATSON, Judge: This case is before me on remand with instructions to admit into evidence collective exhibit 12 and 12A and to reconsider my original decision.

The principal issues in this reappraisement case concerned the quality of certain cantaloupes imported from Mexico in 1965 and whether or not they were freely sold at the price claimed by plaintiff. I found that the quality evaluation made by the appraiser was correct and further that plaintiff had not proved that the merchandise in question was freely sold at the price it claimed as envisioned by the standards of export value set out in section 402 (b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

Before turning to a reconsideration of the evidence, I believe certain clarifications are in order. A reading of the appellate term decision [1]

---

[6] In view of the conclusion reached here that Newton Corp. was a selling agent of American Marine and not a selected purchaser, the court does not reach the question as to whether the price at which the boat in controversy was alleged to have been sold to Newton Corp. fairly reflected its market value.

[1] *Agricolas de Mexico, S. de R.L. de C.V.* v. *United States,* 66 Cust. Ct. 612, A.R.D. 285 (1971).

might leave the impression that at the trial I rejected as evidence an affidavit in lieu of the testimony of a witness who could not attend by reason of serious illness. This portion of the appellate term decision reads as follows:

> The other document claimed to be admissible is an affidavit of Edwin L. LaGrange, collective exhibit 12 and 12A, now deceased, executed at Rio Grande City, Texas, on April 6, 1967. It appears from the affidavits submitted in connection with the motions heretofore mentioned that Mr. LaGrange resided 99 or 100 miles from Laredo and that at the time of trial he was suffering from lung cancer, was recuperating from surgery, was bedridden, and could not have come to Laredo to testify. It is evident, therefore, that his attendance at the trial could not reasonably have been had. Since his affidavit contains statements relevant to the issues herein, it should have been admitted in evidence.

Although the appellate term decision does mention earlier that the LaGrange affidavit, among others, was not offered in evidence at the time of trial, the emphasis of the quoted paragraph may draw attention away from the essential facts that at the time of trial no reference whatsoever was made to the possibility of testimony by Mr. LaGrange, no representations of any sort concerning the use of an affidavit in lieu of testimony, and of course no mention of his state of health. The affidavit was not executed until April 6, 1967, nearly one and a half months after the trial and was not offered as evidence until May 15, 1967, almost three months after trial.

At that time, I rejected the offer of the LaGrange affidavit in plaintiff's motion to set aside the submission for the introduction of additional evidence and again in plaintiff's motion for a rehearing. In a memorandum of March 18, 1970, accompanying the disposition of the latter motion, I stated that the affiant was within the jurisdiction of the court at the time of trial and that plaintiff knew his testimony might be needed and had a duty to see that he appeared.

I regret only that I did not develop and particularize my reasons for denying the admission of the LaGrange affidavit which actually went, not to demand the attendance of a grievously ill witness, but to demand that plaintiff give some indication at trial of an intention to call a witness and if so the circumstances which might delay or preclude his appearance in person so as to justify using an affidavit in lieu of testimony.

The fact that the witness was ill and unable to testify at the trial has absolutely nothing to do with the admissibility of the affidavit since there was no intention to introduce his testimony at the time of trial.

The later attempt was nothing more than an offer of additional evidence. Reopening a case for the reception of additional evidence is

a matter which is entirely within the discretion of a trial judge.[2] His determination should not be disturbed if that discretion was not abused.[3]

It is one thing to reopen a case for the admission of an affidavit in lieu of the testimony of a witness concerning whose absence representations are made to the court at the time of trial and it is exceptional enough when the affidavit is executed some time after trial. It is another matter entirely when a later affidavit is offered in lieu of the testimony of a witness whose appearance is requested for the first time after submission of the case. Furthermore, in this instance there existed no true justification for reopening the case, only a desire on plaintiff's part to supplement the original evidence. Since the source of this evidence was known to exist at the time of trial, diligence should have demanded, at the very least, that plaintiff inform the court, at the time of trial, of its desire to adduce the testimony in question.

I remain of the opinion that legal proceedings should not be reopened for the introduction of new evidence concerning whose introduction due diligence was not exercised at the time of trial[4] and least of all for such evidence when it is merely supplementary or cumulative.[5]

Nevertheless, I am bound by the directions of the appellate term[6] and I have reconsidered the evidence as supplemented by the LaGrange affidavit.

I conclude once again that plaintiff has failed to prove that the quality of the involved cantaloupes differed from that found by the appraiser or that the cantaloupes were freely sold at the price claimed.

The LaGrange affidavit speaks for the most part to his experience with cantaloupes packed in a different area of Mexico by a different packing company and contains only a bare assertion that those cantaloupes were similar to the ones involved here. The affidavit falls far short of the specificity and direct familiarity with the importations which the circumstances of this case require. I continue to be impressed with the testimony of the customs officials based as it was on direct

---

[2] *United States* v. *International Graphite & Electrode Corp.,* 25 CCPA 74, T.D. 49066 (1937) ; *Edmiston* v. *Wilson,* 120 S.E.2d 491, 503 (Sup.Ct. W.Va. 1961) ; *Farley* v. *Farley,* 68 S.E.2d 353, 360 ('Sup.Ct. W.Va. 1951) ; *Houran* v. *Preferred Acc. Ins. Co. of New York,* 195 A. 253, 257 (Sup.Ct. Vt. 1937). See, 5A C.J.S. Appeal & Error § 1606 (1958). See also, 66 C.J.S. New Trial § 41 and § 201(8) (1950).

[3] *Kuntz* v. *Stelmachuk,* 136 N.W.2d 810, 818 (Sup.Ct. N.D. 1965) ; *Filipino Federation of America, Inc.* v. *Cubico,* 380 P.2d 488, 499 (Sup.Ct. Hawaii 1963) ; *Levy* v. *Equitable Fire & Marine Insurance Company,* 146 A.2d 281, 232–233 (Sup.Ct. R.I. 1958). Cf. *United States* v *Chas. Kurz Co.,* 55 CCPA 107, C.A.D. 941 (1968).

[4] Cf. 66 C.J.S. New Trial § 96a and § 104 (1950). See also, Annot., 50 A.L.R.2d 994 (1956) § 3 and § 7.

[5] *Carr* v. *Gale et al.,* 5 F.Cas. 116 (No. 2433) (Me. 1853). Cf. *Roberts* v. *United States,* 17 F. Supp. 641 (D.C. Idaho 1936).

[6] It is the duty of the trial court to comply with the mandate of the appellate court even though it believes the mandate to be erroneous. *Hawaii National Bank, Honolulu* v. *Okino,* 461 P.2d 136 (Sup.Ct. Hawaii 1969), cert. denied 398 U.S. 949 (1970). See, 5B C.J.S. Appeal & Error § 1966 (1958).

observation of the importations and the practices at the packing shed from which they originated.

Accordingly, I make the following findings of fact:

1. That the imported merchandise consists of cantaloupes which were exported by Productos Agropecuarios de Mexico, S. de R. L. de C. V. to the United States, and entered for consumption at Laredo, Texas during the period beginning March 29, 1965 through April 5, 1965. The importer of record is Agricolas de Mexico, S. de R. L. de C. V.

2. That the merchandise does not appear on the Final List promulgated by the Secretary of the Treasury, T.D. 54521.

3. That the merchandise was appraised on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That the cantaloupes which are described by the importer as "Gracias" label, Mexico Pack, are known as export quality No. 2 and the cantaloupes on entry No. 7279 described by the importer as "Pearl" label, Commercial Pack, are known as export quality No. 1 and were appraised on that basis by the appraiser at the port of Laredo, Texas.

I conclude as matters of law:

1. That the plaintiff has failed to sustain the burden of overcoming the presumptively correct appraised values.

2. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here under consideration and that such values are the appraised values.

Judgment will be entered accordingly.