**RATTANCRAFT OF CALIFORNIA,**
**Harper, Robinson & Co., et al.**

**v.**

**UNITED STATES.**

**R.D. No. 11764; Reappraisement**
**R67/1241 and two others.**

United States Customs Court.
March 9, 1972.

Glad & Tuttle, San Francisco, Cal. (Edward N. Glad, San Francisco, Cal., of counsel), for plaintiffs. .

L. Patrick Gray, III, Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial Atty.), for defendant.

WATSON, Judge:

This case is before me on remand from the appellate term of this court.[1] In the original appeal for reappraisement, decided on March 25, 1971, I found that plaintiffs had failed to prove the export value they claimed for the merchandise in question. I relied heavily on the report of a treasury agent, Perry J. Spanos.[2] On April 5, 1971 plaintiffs filed an application for review. On June 26, 1971 plaintiffs filed their review brief to which was attached a copy of a judgment in United States v. Pericles John Spanos (USDC, C.D.Calif. No. 7660–Criminal) entered on June 11, 1971 in which Spanos was convicted of theft of government property and converting property of another by an officer or employee of the United States. The judgment was offered for the purpose of impeaching Spanos' testimony.

After oral argument the appellate term remanded the case with directions " * *

to receive evidence of the conviction of the witness * * * and to reconsider its original determination and make new findings after weighing the testimony and report of the witness in light of said conviction."

It is my considered opinion that this remand raises grave questions as to the procedures followed by the appellate term and I would be remiss in not discussing my reservations before turning to a reconsideration of the case.

In commencing I note that the conviction took place after the original decision was rendered and after the 30-day period within which to move for rehearing[3] had expired. I am firmly convinced that the only way to offer this conviction, or anything else in evidence after judgment is by way of a motion for rehearing.

Since the time to make such a motion had expired before the date of conviction, in this instance there is no way, consonant with correct judicial procedure, to utilize the fact of conviction to impeach the witness' character. I do not consider this a matter to be characterized either as a loss of opportunity or unfairness to plaintiffs or as a stroke of good fortune for defendant. It is simply a circumstance which arises from the working of basic procedural rules and the inexorable movement of time.

I believe the procedure by which it has now been introduced into the case, that is to say by an offer to the appellate term, which took judicial notice of it and directed its reception in evidence on remand, is entirely incorrect.

I am further of the opinion that evidence of this nature should not be admitted even if offered by way of a timely motion for a new trial.

---

1. Rattancraft of California, Harper, Robinson & Co. et al. v. United States, 336 F.Supp. 1401, 68 Cust.Ct. ——, A.R.D. 298 (1972).

2. 28 U.S.C. § 2633 (1964 ed.) permits the reception in evidence of reports of officers of the United States.

3. Rule 6(a) of the Rules of the United States Customs Court (adopted April 25, 1949, as amended and in effect on July 1, 1968) is applicable to this case by virtue of Rule 14.9(b) (1) of the Rules of the United States Customs Court currently in effect.

The appellate term must base its review on the record and evidence as established at trial and cannot add to them. Johnson Co. v. United States, 13 Ct.Cust. App. 373, 379, 380, T.D. 41318 (1926). Consideration by the appellate term of the fact of conviction is no less objectionable because it was judicially noticed than it would be if it were actually received in evidence. Judicial notice as taken by the appellate term was a method of receiving evidence, differing from the usual methods only in that the requirements of proof are dispensed with. 9 Wigmore on Evidence § 2565 (1940). The appellate term may not take judicial notice of subsequent facts in the case on appeal. Public Service Commission, First Dist. v. Brooklyn Borough Gas Co., 189 App.Div. 62, 178 N.Y.S. 93, 101 (1919). This was not the judicial notice of the law, which is the prerogative of every court.[4]

In sum, the conviction of the witness did not occur until after judgment and after the time for a motion for a new trial. It could not form part of the record or evidence by exclusion[5] or inclusion and therefore cannot be a proper subject for consideration on review.[6] Cf. United States v. Titan Shipping Co., Inc. (E. J. Fay), 25 CCPA 403, T.D. 49485 (1938).

In addition the procedure followed herein deprives the defendant of the opportunity to bolster the credibility of its witness by adducing additional evidence to sustain his character and reputation; an opportunity which justice and precedent clearly demand.[7] United States v. Boyer, 80 U.S.App.D.C. 202, 150 F.2d 595 (1945); Mas v. United States, 80 U.S.App.D.C. 223, 151 F.2d 32 (1945), cert. denied 326 U.S. 776, 66 S.Ct. 267, 90 L.Ed. 469 (1945); United States v. Crisafi, 2 Cir., 304 F.2d 803 (1962). Cf. Merrill v. United States, 6 F.2d 120 (9th Cir. 1925). In any event it should be within the discretion of the trial court to allow additional rehabilitating evidence. Bank of America National Trust and Savings Association v. Rocco, 241 F.2d 455, 459 (3 Cir. 1957), cert. denied First Nat. Bank in Ind., Pa. v. Bank of Am. Nat. Trust & Sav. Ass'n, 353 U.S. 973, 77 S.Ct. 1056, 1 L.Ed.2d 1135 (1957); United States v. Pinna, 229 F.2d 216, 219 (7th Cir. 1956). This option is not left open by the terms of the remand.

Over and above the procedural defects in this matter is a serious substantive problem. The almost universal rule of the courts, both federal and state, is that newly discovered evidence will not justify a new trial if its only object is to impeach the character or credit of a witness. Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); United States v. Johnson, 7 Cir., 142 F.2d 588, 592, cert. dismissed 323 U.S. 806, 65 S.Ct. 264, 89 L.Ed. 643 (1945); United States v. Rutkin, 3 Cir., 208 F.2d 647, 654; United States v. Frankfeld,

---

4. 9 Wigmore on Evidence § 2572 (1940).

5. In its brief after trial plaintiffs sought to impeach the witness' character by stating that Spanos had been " * * * separated from the Customs Service and arrested for allegedly taking bribes * *." I ordered this portion of the brief stricken on motion of the defendant.

   It is fundamental that a party may not bring out the fact a witness has been arrested for or charged with a crime for which he has not been convicted; and certainly not by assertions in a brief. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Rizzo v. United States, 8 Cir., 304 F.2d 810, 830 (1962), cert. denied Nafie v. United States, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962); United

States v. Katz, D.C., 78 F.Supp. 435, 439 (1948), aff'd, 3 Cir., 173 F.2d 116 (1949). Cf. 9 Wigmore on Evidence § 980(a) (1940).

6. See generally 4A C.J.S. Appeal & Error § 1202, 5 C.J.S. Appeal & Error § 1274 et seq.

7. The cases cited by plaintiffs to support the complete exclusion of mitigating testimony; Lamoureux v. New York, N.H. & H.R. Co., 169 Mass. 338, 47 N.E. 1009 (1897) and Morrissey v. Powell, 304 Mass. 268, 23 N.E.2d 411 (1939), are not in conformity with the general federal rule. See United States v. Boyer, 150 F.2d 595, 596 (1945) text accompanying note 7. See generally, Anno. 166 ALR 211.

111 F.Supp. 919, 923, aff'd, sub nom. Meyers v. United States, 4 Cir., 207 F.2d 413.

This is not to say that logical reasoning from subsequent acts is any less cogent than reasoning from prior acts. It is simply the exigencies of an orderly judicial process which require that witness—character must always involve the argument from prior character exclusively. See 3 Wigmore on Evidence § 929 (1940).

In Livingston v. Hubbs, 3 Johns Ch. 124, pages 126 and 127 (1817), Chancellor James Kent pungently and enduringly expressed the law on this subject as follows:

> \* \* \* There never was a more lame and feeble attempt to support a bill of review, on the ground of newly discovered evidence. Most of the testimony goes to the *credit* of the witnesses examined on the part of the plaintiff; but the credit of witnesses is not to be impeached after the hearing and decree. Such applications for an examination to the credit of a witness are always regarded with great jealousy, and they are to be made before the hearing. (White v. Fussell, 1 Vesey & Beame, 151.) There would be no end of suits, if the indulgence asked for, in this case, was to be permitted. [Emphasis supplied.]

The cases cited by the appellate term are entirely consistent with the view that a subsequent conviction or any other subsequent facts are not grounds for a new trial if the object of their introduction is to impeach a witness' character. In State of Arizona v. Owen, 101 Ariz. 156, 416 P.2d 589 (1966), cert. denied 388 U.S. 915, 87 S.Ct. 2128, 18 L.Ed.2d 1356 (1967), the conviction which was introduced in evidence for impeachment purpose was, in all respects, a *prior* conviction, i. e., prior to the trial at which the impeached testimony was being introduced. This is a common occurrence and has no bearing on reopening a case for the introduction of a conviction *subsequent* to a judgment in the trial in

question. United States v. Aguillar, 2 Cir., 387 F.2d 625 (1967), holds primarily that a criminal charge without conviction may not be used to impeach a witness and secondly that new evidence which merely discredits a government witness without contradicting his testimony ordinarily does not justify granting a new trial—a position directly opposite to that taken by the appellate term.

The two remaining cases cited by the appellate term, apart from other distinguishing factors, involve instances where the appellate tribunals had before them strong indications that perjury had been committed in the case they were reviewing, not simply facts tending to impeach the general character of a witness.

In Communist Party of United States v. Subversive Activities Control Board, 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003 (1956), unlike here, a special statutory mandate existed under Section 14(a) of the Subversive Activities Control Act of 1950 (64 Stat. 987), by which an organization required to register with the Attorney General after an investigation by the Subversive Activities Control Board could apply for leave to adduce additional evidence on the appellate level. Furthermore, the thrust of the additional evidence was to show that certain witnesses had committed perjury in testifying in other cases involving subject matter substantially the same as that in the case under appeal. A case which permits evidence of perjury on the appellate level pursuant to special statutory provision does not support the admission of less consequential general impeachment of the type being attempted in this case. There is a clear distinction between evidence tending to show perjury and going to the specific subject of a witness' testimony and evidence of a general impeaching character without a direct bearing on the subject matter.

The case of Mesarosh v. United States, 352 U.S. 1, page 9, 77 S.Ct. 1, page 5, 1 L.Ed.2d 1 (1956), recognizes this dis-

tinction and states unequivocally as follows:

It must be remembered that we are not dealing here with a motion for a new trial initiated by the defense, under Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., presenting untruthful statements by a Government witness subsequent to the trial as newly discovered evidence affecting his credibility at the trial. Such an allegation by the defense ordinarily will not support a motion for a new trial, because *new evidence which is "merely cumulative or impeaching" is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial.* [Emphasis supplied, footnote omitted.]

In the *Mesarosh* case the subsequent facts considered by the Supreme Court regarding the witness in question was testimony of an uncontrovertibly false and outrageous nature given in related proceedings and on related subject matter. Again, the thrust of the subsequent facts went to totally discredit the *substance* of the witness' testimony and not merely to impeach his character.

In sum, my reservations regarding the introduction in evidence of Spanos' conviction subsequent to judgment are based on the fact that the conviction was improperly considered by the appellate term, that no opportunity was given for defendant to rehabilitate its witness and that it is contrary to the general rule that a case should not be reopened for the impeachment of a witness' character.

■ Nevertheless, I am bound by the directions of the appellate term whether or not I am in agreement with its decision. Hawaii National Bank, Honolulu v. Okino, 51 Haw. 367, 461 P.2d 136 (1969), cert. denied 398 U.S. 949, 90 S. Ct. 1867, 26 L.Ed.2d 289 (1970); Agricolas de Mexico, S. de R.L. de C.V. v. United States, 68 Cust.Ct. ——, R.D. 11762 (1972).

I have received in evidence, as exhibit 4, a copy of the conviction in question and I have weighed the testimony and report of Spanos in its light.

■ I am still inclined to give the testimony and report a good measure of credence and considerable weight. In so doing I am exercising the prerogative of a trial judge to determine the credibility of witnesses and the weight to be attached to their testimony. See 89 C.J.S. Trial § 593(b) (1955).

■ It must be kept in mind that impeachment is an attack on credibility. It is not *ipso facto* the complete destruction of credibility. State v. Wehde, 226 Iowa 47, 283 N.W. 104, 105 (1938). Impeachment is only one element or factor to be considered in determining a witness' credibility. Walker County Lumber Co. et al. v. Sweet et al., Tex.Civ. App., 40 S.W.2d 225, 227 (1931); cf. Bosserman v. Watson, 230 Iowa 627, 298 N.W. 804, 811 (1941). I do not believe the criminal activity for which Spanos was convicted must necessarily pervade and taint all his other actions. See United States v. One 1940 Ford Sedan et al., 86 F.Supp. 170, 171 (D.C.N.D.Fla. 1949).

■ I remain favorably impressed with Spanos' bearing and demeanor on the witness stand as well as with the internal consistency and plausibility of his testimony and report. There is nothing in his later criminal conviction which casts specific doubt on the truth of any facts contained in his testimony and report. It is therefore my judgment that his testimony and report are entitled to considerable weight.

■ As a result of the evidence in the Spanos' report that the inland charges were overstated and manipulated to allow for bribes paid to obtain a reduction of ocean freight and other charges the routine assertions in the manufacturers' affidavits and the rather general testimony of plaintiffs' president are insufficient in this case to establish that the merchandise is freely sold without disputed charges. In view of the questionable nature of these charges I would demand considerably more detail regarding

specific transactions and rigorous proof regarding sales of the merchandise in question at prices which do not include the disputed charges.

At this point, I note that the Spanos' report is essential to my decision and without it, as the appellate term correctly surmised, my decision might well have been different. In fact, the proof offered by plaintiffs would, in my view, have been adequate to establish the claimed values.

The inflated appearance of the inland charges merely confirms the definite information in the Spanos' report. Absent the report the high inland charges alone would not support inferences of shady practices, would not justify ignoring the separable nature of the appraisement with its restriction of the issue to whether the importations were freely sold at ex-factory prices and would not warrant holding plaintiffs to a more rigorous standard of proof for free sales at ex-factory prices.

It is the report and the report alone which indicates with particularity that the amounts assigned to inland charges are false. And, it is the doubts raised by these circumstances which influence my evaluation of plaintiffs' proof.

In light of the above, I make the following findings of fact:

1. The merchandise herein consists of various bamboo articles exported from Taiwan during the period from December 4, 1964 to April 9, 1966.

2. The merchandise does not appear on the Final List (T.D. 54521) promulgated by the Secretary of the Treasury pursuant to the Customs Simplification Act of 1956.

3. The merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced unit values, packed, plus items marked "X".

4. That plaintiffs failed to prove that the merchandise was freely offered for sale at a price which did not include the items marked "X".

I therefore make the following conclusions of law:

1. Export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the merchandise herein.

2. Plaintiffs have failed to overcome the presumption of correctness attaching to the appraised values found by the district director.

3. The correct export values herein are the appraised values.

Judgment will be entered accordingly.