**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jairo ESPINOSA–HERNANDEZ,
Defendant–Appellant.**

**Nos. 89–5005, 90–5194.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 7, 1990.

Theodore J. Sakowitz, Federal Public Defender, Richard C. Klugh, Jr., Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Harriett R. Galvin, Linda C. Hertz, Kenneth F. Noto, Terrence J. Thompson, Anne R. Schultz and Kenneth F. Noto, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

PER CURIAM:

This case presents the appeal of the denial of a motion for new trial following the appellant's conviction of conspiracy to import narcotics into the United States in violation of 21 U.S.C. § 952(a) and 21 U.S.C. § 963.[1] This Court's jurisdiction arises under 28 U.S.C. § 1291.

After the appellant's conviction, the Customs Service agent in charge of the investigation leading to that conviction was accused by the United States of serious wrongdoing. The appellant moved for a new trial on the basis of this newly discovered evidence and requested an evidentiary hearing and discovery. The District Court denied his motion without holding an evidentiary hearing and without allowing discovery into the agent's alleged misconduct. We affirm the conviction. *See supra* note 1. We reverse the denial of the motion for a new trial and remand for discovery and an evidentiary hearing.

### Facts.[2]

This case arose out of an undercover government sting operation. The appellant, Jairo Espinosa–Hernandez ("Espinosa"), was indicted with two other alleged co-conspirators: Julio Trujillo ("Trujillo") and Frank Edward Obyrne–Acardi ("Obyrne"). Customs Service Agent David Urso ("Urso") was the case agent in charge of the operation leading to the indictment.

On April 30, 1988, Urso and two confidential government informants, Romero[3] and Ramon Navarro ("Navarro"), met with Trujillo and began making arrangements for the importation of several hundred kilograms of cocaine from Columbia to the United States. The government videotaped this discussion. The cocaine was to be flown from Columbia to the Bahamas where it was to be dropped to boats waiting below. The boats would then transport the cocaine to Florida.

On May 29, 1988, Customs Service Special Agent Lawrence E. Winberg ("Winberg"), Navarro, and confidential government informant William L. Bottoms ("Bottoms") met with Obyrne and Espinosa to discuss plans to transport several hundred kilograms of cocaine from Columbia to the Bahamas. Winberg and Bottoms testified at trial that Espinosa was present for these discussions and understood that the plans concerned cocaine. Espinosa denied that he knew the negotiations were about cocaine. Espinosa claimed the talks were in English and that he is conversant only in Spanish.

Rather than proceeding as planned, government informant Bottoms flew the cocaine directly to Miami, Florida, bypassing the Bahamas. On June 5, 1988, Urso met with Espinosa in Key Largo, Florida, to complete delivery of the contraband. Urso testified that Espinosa was very anxious to accept the cocaine. Espinosa testified that he refused to take possession of any cocaine. Federal authorities arrested Espinosa while he was speaking with Urso in a parking lot. Subsequent to his arrest, Espinosa made several incriminating remarks to Customs Service Agent Eddie

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Additionally, the appellant has directly appealed his conviction on several grounds. The two appeals were consolidated before this Court. With respect to the direct appeal of the conviction only, the judgment of the District Court is affirmed. *See* 11th CIR.R. 36–1.

2. Because we have affirmed the conviction, we only address those facts that are relevant to our decision regarding the appellant's motion for a new trial.

3. "Romero" is apparently an assumed name. The true identity of this confidential government informant was not revealed at trial.

Agrait. These remarks were made during the course of Espinosa's attempts to lure Obyrne into accepting delivery of the cocaine.

The indictment charges in two counts that a single conspiracy to possess with intent to distribute cocaine and to import cocaine into the United States existed among Espinosa, Trujillo, and Obyrne. Urso was the only witness to testify before the grand jury. It is undisputed that Urso made certain false statements both in his grand jury testimony and in his affidavit for the criminal complaint. These misstatements related to dates of meetings and amounts of cocaine, and they painted a picture that the Trujillo plan and the Espinosa/Obyrne plan contained several common threads.

Espinosa and Trujillo were jointly tried.[4] At trial, both defendants argued that the testimony of Navarro was essential to the defense that the government had squeezed two alleged conspiracies into one. However, Navarro had evaded process and had threatened process servers. As a confidential informant, Navarro was under Urso's supervision. Urso claimed that he had attempted unsuccessfully to contact Navarro. Based upon the representations of Urso, the District Court found that Navarro was unavailable to testify. The jury found Espinosa guilty of conspiracy to import cocaine, but found him not guilty of conspiracy to possess cocaine. The jury found Trujillo not guilty on both counts.

Subsequent to the conviction, Espinosa learned of allegations of serious wrongdoing by Urso. Specifically, a federal grand jury has indicted Urso for allegedly making false statements on his federal job application regarding his past use and sale of drugs. In other words, Urso stands accused of lying to obtain his employment as a Customs Service agent. Additionally, the appellant has asserted that Urso is under investigation for both his participation in the escape from federal custody of an incarcerated confidential government informant and his alleged distribution of cocaine.

With this new evidence in hand, Espinosa filed a motion for a new trial based on newly discovered evidence and a motion for discovery of matters relevant to the Urso allegations. On December 15, 1989, the magistrate recommended denial of the motion for new trial, but recommended the motion for discovery as to Urso's misconduct be granted. On February 7, 1990, the District Court rejected the magistrate's discovery recommendation and denied Espinosa discovery. Concluding that the newly discovered evidence would be purely impeaching, and in any event, unlikely to lead to a different outcome at trial, the District Court denied Espinosa's motion for a new trial.

### Discussion

■ The District Court abused its discretion in denying Espinosa's motion for discovery into Urso's alleged misconduct and in denying the motion for a new trial without first conducting an evidentiary hearing. The District Court was premature in concluding that the newly discovered evidence would merely be impeaching and that this evidence would be unlikely to lead to an acquittal on retrial.[5]

We do not share the District Court's certainty of the impeaching nature of this evidence. Urso stands accused of serious and disturbing breaches of the public trust. Without the benefits of discovery and an evidentiary hearing, it is impossible to say that evidence of Urso's misconduct is merely impeaching.

For example, discovery might lead to the conclusion that Urso committed perjury in

---

4. Obyrne was not apprehended.

5. In order to justify the grant of a new trial under FED.R.CRIM.P. 33 based on newly discovered evidence, a movant must satisfy four elements: (1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material, and not merely cumulative or impeaching; (3) the evidence must be such that it will probably produce an acquittal; and (4) the failure to learn of such evidence must be due to no lack of due diligence on the part of the defendant. *United States v. Sjeklocha,* 843 F.2d 485, 487 (11th Cir.1988).

Espinosa's trial or a related proceeding. It must be remembered that Espinosa alleges Urso is under investigation for his alleged participation in the escape from federal custody of an incarcerated confidential government informant with whose supervision Urso was charged. In the current case, Espinosa claims that Urso willfully secured the unavailability of another Urso-supervised informant. Discovery into the investigation might show that Urso has committed perjury in a proceeding similar to Espinosa's trial. If so, the discovered evidence would be beyond that of mere impeachment and a new trial would be necessary to "remove the taint" from Espinosa's conviction. *See Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); *Communist Party of the United States v. Subversive Activities Control Bd.*, 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003 (1956); *Williams v. United States*, 500 F.2d 105 (9th Cir.1974); *United States v. Chisum*, 436 F.2d 645 (9th Cir.1971); *see also United States v. Brunoehler*, 714 F.2d 99, 101 (11th Cir.1983).

■ Discovery might also enlighten the District Court as to when the United States Attorney's office first learned of the disturbing allegations against Urso. Depending upon when this information was learned, Espinosa might succeed in obtaining a new trial based upon the government's failure to disclose evidence that could have been used to impeach a government witness. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (plurality opinion); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[6]

We further disagree with the District Court's view of the impact this evidence might have at a second trial. True, the testimonies of other witnesses—Bottoms, Winberg, and Agrait—appear to have inflicted the greatest damage to Espinosa's defense. Yet this testimony was hotly contested by Espinosa at trial. Urso's testimony that Espinosa was anxious to complete delivery of the cocaine may have tarnished Espinosa's credibility in the eyes of the jury enough that the jury disbelieved his claims of innocence and instead believed the testimony of Winberg, Bottoms and Agrait. *See, e.g., Communist Party*, 351 U.S. at 124, 76 S.Ct. at 667–68 (That there is ample innocent testimony to support the findings does not remove the taint created when it is alleged that findings are in part the product of witnesses who have perjured themselves in a similar proceeding).

From a procedural standpoint, too, Urso had a tremendous impact on Espinosa's conviction. Urso was alone responsible for persuading the grand jury that a single conspiracy existed. Espinosa and Trujillo were consequently tried together. The requested discovery might lead to evidence showing bad faith in Urso's misstatements to the grand jury and in his criminal complaint affidavit. And again, Urso was the agent in control of Ramon Navarro. The District Court charged Urso with the responsibility of securing the attendance of Navarro. Based solely on Urso's representations, the District Court found that Navarro was unavailable for trial. Discovery into the new allegations might support Espinosa's claim that Urso deliberately secured Navarro's unavailability.

It is thus too soon to declare out of hand that the new evidence will not require a new trial. The new evidence might easily extend beyond that of mere impeachment and it might be likely to lead to Espinosa's acquittal in a second trial. We REVERSE the decision of the District Court denying Espinosa's motion for a new trial, and REMAND for discovery and an evidentiary hearing concerning Urso's misconduct as it bears upon the new trial motion. We AFFIRM the conviction. *See supra* note 1.

---

**6.** We express no opinion as to whether Urso's knowledge of his own misconduct can be attributed to the United States Attorney.