[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14796
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cr-00078-SCB-TBM-1


UNITED STATES OF AMERICA,

                                                          Plaintiff-Appellee,

versus

STANLEY COLLINS,

                                                          Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 7, 2013)

Before  TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Stanley Collins appeals his convictions for conspiracy to possess with intent

to distribute cocaine and attempted possession with intent to distribute cocaine.  On

appeal, Collins argues that the district court erroneously denied his motion for a judgment of acquittal ("JOA") as to the conspiracy charge; (2) the district court erroneously denied his motion for a JOA as to the attempt charge; and (3) the district court abused its discretion in denying an evidentiary hearing for Collins to investigate whether to seek a new trial based on newly discovered evidence. For the reasons set forth below, we affirm Collins's convictions.

I.

In 2012, a federal grand jury returned an indictment, charging Collins with conspiracy to possess and distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 (Count 1), and attempt to possess with intent to distribute five kilograms or more of cocaine in violation of 26 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846 (Count 2). The indictment alleged that the conspiracy occurred from an unknown date until approximately January 2012 and that the attempt offense occurred on January 6, 2012.

Collins proceeded to trial, at which the government presented numerous witnesses, including Rene Bernal Vergara ("Bernal"), who was the government's confidential informant in the case. Bernal testified that, in 2008, he began living with an individual named Diego Banos, who worked with someone named Betancourt to sell cocaine. Further, Bernal also became involved with Betancourt and helped him deliver cocaine to Collins, who was one of Betancourt's biggest

2

customers.  In 2009 and 2010, Collins purchased one to three kilograms of cocaine during each transaction with Betancourt, and Collins paid cash for the drugs.  Also, prior to purchasing the drugs, Collins would cook it into crack cocaine "cookies" to test its quality.  In total, Bernal participated in delivering approximately 20 kilograms of cocaine to Collins.

Eventually, Betancourt traveled to Mexico and, in November 2011, he asked Bernal to help him to sell drugs to Collins.  During a recorded phone conversation, Bernal scheduled a meeting with Collins for December 8, 2011.  The purpose of the phone call and the meeting was to discuss a deal for the sale of five kilograms of cocaine.  During the meeting, Bernal and Collins negotiated a sale for a possible total of eight kilograms of cocaine, and Collins agreed to pay $29,500 per kilogram.  Subsequently, during a recorded phone call on January 5, 2012, Bernal and Collins scheduled the transaction for the next day.  Prior to the meeting, Collins indicated that he had obtained the money to pay for five kilograms.  On January 6, 2012, Bernal met Collins at a restaurant before going to a separate location where the drugs were purportedly located and, at the meeting, Collins showed Bernal a bag with $150,000 in cash.  Bernal then told Collins to follow him and an undercover officer to a house where they would complete the deal but, in reality, there was no house and Bernal did not intend to deliver any cocaine to

Collins.  While Collins was following Bernal to the house, the police initiated a traffic stop of Collins, who attempted to flee from officers in his car.

Banos, who had also helped Betancourt deliver cocaine to Collins in 2009 and 2010, testified similarly to Bernal regarding the drug transactions between Collins and Betancourt.  Additionally, Dan Gordon, a special agent with the Drug Enforcement Administration, testified regarding his role in the investigation of Collins and the controlled drug transaction that he arranged between Bernal and Collins in January 2012.  Gordon testified that, after Collins was arrested, a search of his car revealed approximately $150,000 in cash.  Although Collins admitted that he owned the money, he asserted that he planned to use the money to purchase a foreclosed property.  However, Collins could not provide further details, such as a description or location of the property.  Finally, several law enforcement officers testified regarding the shooting incident that occurred at Collins's home on September 11, 2010.  When officers responded to the crime scene, they discovered cocaine and other items that are commonly used in drug sales, including "sandwich baggies," a bottle of inositol, a razor blade, and a digital scale.  Moreover, officers found "dime baggies" of cocaine that were "individually packaged for sale."

After the conclusion of the government's case, Collins moved for a JOA as to both counts of the indictment under Fed. R. Crim. P. 29.  As to the conspiracy charge, he argued that the government's only evidence was the testimony of Bernal

4

and Banos, and their testimony was not credible because they both made deals with the government in exchange for reduced sentences. As to the attempt charge, Collins argued that he did not commit an attempt under the applicable law. Specifically, the evidence did not show that Collins "got to the point of no return," as he did nothing other than mere planning and preparation. In fact, the officers arrested Collins before he exchanged money with the informant and before they were at a location with any real or fake cocaine.

The court denied Collins's Rule 29 motion, finding that there was more than ample evidence that, if believed by the jury, would support a guilty verdict as to the conspiracy charge. Further, substantial evidence also supported a conviction as to the attempt charge. Ultimately, the jury found Collins guilty on both counts.

Subsequently, Collins filed a motion "requesting a hearing regarding newly discovered evidence." Specifically, the motion indicated that Collins's counsel had been prohibited from interviewing or questioning a potential witness, Rolando Castaneda, by Castaneda's counsel, but his potential testimony was "described in detail" in an unsolicited letter that Castaneda had sent to Collins's counsel. Collins alleged that, during his confinement, he had been incarcerated with Castaneda, who was roommates with another inmate named Ruben Romero Suarez. Suarez was on the government's witness list in Collins's case, but he was not called as a witness at trial. Castaneda's letter indicated that, at some point during their

5

incarceration, Suarez informed him that Banos planned to testify against Collins in an attempt to get "time off from prison." Further, Suarez told Castaneda that he would testify against Collins in exchange for a reduced sentence, "even though he knew [Banos] was lying." In his motion, Collins asserted that it appeared that Castaneda would be willing to testify that Suarez and Banos planned to offer perjured testimony against Collins, and that Banos actually did so in exchange for a lower sentence. Given this new evidence and the significance of Banos's testimony, Collins requested that the court hold an evidentiary hearing, so that Castaneda could testify and Collins could consider whether to file a motion for a new trial.

The district court denied Collins's motion for a hearing. The court found it significant that Collins had not filed a motion for a new trial under Fed. R. Crim. P. 33(b)(1). Instead, Collins asserted that he had been prohibited from interviewing or questioning Castaneda, and he requested a hearing at which Castaneda would testify, so that Collins could then consider whether to file a motion for a new trial. The court found that it was apparent that further investigation was necessary for Collins to determine whether he should seek a new trial, and such investigation was "not within the purview of the [c]ourt's function." Subsequently, the court imposed concurrent life sentences as to each count.

II.

6

We review *de novo* a district court's denial of a motion for a JOA on sufficiency of the evidence grounds. *United States v. Yates*, 438 F.3d 1307, 1311-12 (11th Cir.2006) (en banc). In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, and draw all reasonable factual inferences in favor of the jury's verdict. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). The evidence is sufficient to support a conviction if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* at 1284-85. Whether the evidence is direct or circumstantial, we will accept all reasonable inferences that tend to support the government's case. *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004). The jury is free to choose among reasonable constructions of the evidence, and we must accept a jury's determinations of witness credibility. *Id.* at 1323.

When a party fails to raise a specific argument before the district court, we review only for plain error. *United States v. Olano*, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993). Under plain error review, the appellant must show (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 732, 113 S. Ct. at 1776.

"To sustain a conviction for conspiracy to distribute narcotics the government must prove that 1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." *United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009). Even in cases where individual dealers compete for drug sales, a conspiracy exists where "their combined efforts produced a haven for the illegal distribution of drugs." *Id.* In this Circuit, it is well established that, "where there are repeated transactions buying and selling large quantities of illegal drugs, that is sufficient evidence that the participants were involved in a conspiracy to distribute those drugs in the market." *Id.* In order to have an "agreement" to support a conspiracy conviction, the government must prove the existence of "an agreement with the same joint criminal objective." *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999). While a simple buy and sell transaction is not sufficient proof of a conspiracy, a continuing relationship between two persons that results in the repeated transfer of illegal drugs to the purchaser is sufficient to support an inference that the buyer and seller were engaged in a conspiracy. *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005). "An illegal agreement may be inferred from the conspirators' conduct and other circumstantial evidence." *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1374 (11th Cir. 1994).

8

As an initial matter, although Collins moved for a JOA as to the conspiracy count, he raises a new argument for the first time on appeal.  Specifically, before the district court, Collins argued that the only testimony supporting the conspiracy charge was offered by witnesses who were not credible.  However, on appeal, he argues for the first time that evidence did not establish that he shared a joint criminal objective with any individual co-conspirator, and it established only that he had a buyer-seller relationship with Betancourt.  Thus, we review his argument only for plain error.  *See Olano*, 507 U.S. at 731-32, 113 S. Ct. at 1776.

Regardless, under either standard of review, the district court did not err in denying Collins's motion for a JOA as to the conspiracy count.  Specifically, evidence showed that, between 2009 and 2011, Collins and Betancourt engaged in an ongoing relationship in which Collins repeatedly purchased kilogram quantities of cocaine from Betancourt.  *See Thompson*, 422 F.3d at 1292.  In total, Collins purchased at least 20 kilograms of cocaine from Betancourt, and Collins paid cash for 1 to 3 kilograms of cocaine during each transaction.  Additionally, before purchasing the cocaine, Collins would cook some of it to test its quality.  Although Collins had an objective to purchase cocaine and Betancourt had an objective to sell cocaine, evidence of their ongoing relationship of buying and selling large quantities of cocaine was sufficient for the jury to infer that they shared a joint criminal objective to distribute cocaine.  *See id.*; *Brown*, 587 F.3d at 1089.

9

Moreover, additional circumstantial evidence supported a reasonable inference that Collins purchased the cocaine for resale. *See Williams*, 390 F.3d at 1324. Specifically, a search of Collins's home in September 2010 revealed several items that are commonly used in drug sales, including sandwich baggies, a razor blade, inositol, a digital scale, and cocaine that was "individually packaged for sale." Based on this evidence, a rational jury could have found beyond a reasonable doubt that Collins conspired with Betancourt to possess and illegally distribute at least five kilograms of cocaine. *See Jiminez*, 564 F.3d at 1284-85.

In sum, viewing the evidence in the light most favorable to the government, with all inferences and credibility choices made in its favor, the district court did not err in concluding that sufficient evidence supported a guilty verdict as to the conspiracy count. *See id.* at 1284.

### III.

To sustain a conviction for attempted possession with intent to distribute cocaine, the government must prove beyond a reasonable doubt that the defendant (1) acted with the kind of culpability required to possess cocaine knowingly and willfully and with the intent to distribute it; and (2) engaged in conduct which constitutes a substantial step toward the commission of the crime under circumstances strongly corroborative of his criminal intent. *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). Further, "a substantial step must

10

be more than remote preparation, and must be conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Ballinger*, 395 F.3d 1218, 1238 n.8 (11th Cir. 2005).

The district court did not err in denying Collins's motion for a JOA as to the attempt charge, as evidence was sufficient to show that he took several substantial steps towards the commission of the underlying drug offense. *See McDowell*, 250 F.3d at 1365. Specifically, evidence showed that, in December 2011, Collins met with Bernal to discuss a transaction in which Collins would purchase between five to eight kilograms of cocaine from Bernal and, during the meeting, Bernal agreed to a price of $29,500 per kilogram. On January 6, 2012, during a recorded phone call, Collins told Bernal that he had obtained enough cash to pay for five kilograms of cocaine, which, at the agreed-upon price would have been $147,500. The next day, Collins drove to a restaurant to meet Bernal, he showed Bernal $150,000 in cash, and he agreed to follow Bernal to a house, where the drugs were purportedly located. This evidence showed that Collins's conduct went beyond mere planning and preparation to commit the underlying offense, as he took several substantial steps towards completing the drug transaction. *Ballinger*, 395 F.3d at 1238 n.8. Although the police arrested Collins before he purchased any real or fake drugs, he acted with the kind of culpability that showed his intent to possess and distribute cocaine. *See McDowell*, 250 F.3d at 1365.

11

Further, other evidence supported a jury verdict that Collins intended to participate in an illegal drug transaction. Specifically, after the police initiated the traffic stop, Collins fled from police at a high rate of speed before he was apprehended. Additionally, in a post-arrest statement, Collins failed to provide an adequate explanation for why he brought $150,000 in cash to meet Bernal. Although he stated that he intended to use the money to purchase a foreclosed property, he could not identify the property or provide any details about the alleged real estate transaction. Thus, viewing the evidence in the light most favorable to the government, the district court did not err in concluding that a rational juror could have found beyond a reasonable doubt that Collins attempted to possess and distribute five kilograms or more of cocaine. *See Jiminez*, 564 F.3d at 1285.

## IV.

We review a denial of a motion for new trial for abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc). Likewise, we review for abuse of discretion a district court's decision concerning whether to hold an evidentiary hearing. *United States v. Massey*, 89 F.3d 1433, 1443 (11th Cir.1996). Fed. R. Crim. P. 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In *United States v. Jernigan*, 341 F.3d 1273 (11th Cir. 2003), we held that, to

succeed on a Rule 33 motion based on newly discovered evidence, the defendant must establish that:

> (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*Jernigan*,341 F.3d at 1287.

When the resolution of a motion for a new trial is clear, the district court is not required to hold an evidentiary hearing. *Id.* at 1289. "Where evidentiary hearings are ordered, it is because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third party confession." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977). A district court should grant an evidentiary hearing on a motion for new trial where the defendant offers "sufficient evidence that [his] allegations and reports could materially have affected his trial." *United States v. Fernandez*, 136 F.3d 1434, 1438-39 (11th Cir. 1998). In *United States v. Espinosa-Hernandez,* 918 F.2d 911, 913-14 (11th Cir. 1990), a case on which Collins relies on appeal, we ordered an evidentiary hearing on a defendant's motion for a new trial, where new evidence showed that a narcotics agent who testified at the defendant's trial had been indicted for "serious and disturbing breaches of the public trust"—including lying about his history of using and selling drugs on his federal job application, distributing cocaine, and

13

allegedly helping an informant escape from custody. Specifically, we concluded that a hearing was warranted because discovery might show "that [the agent] committed perjury in [the defendant's] trial or a related proceeding" and, if so, a new trial would be necessary to "remove the taint" from Espinosa's conviction. *Id*.

Here, Collins cannot show that the district court abused its discretion in denying an evidentiary hearing because he never filed a motion for a new trial based on newly discovered evidence. *See Massey*, 89 F.3d at 1443. Moreover, Collins does not provide, and research does not reveal, any binding authority suggesting that he was entitled to a court-ordered evidentiary hearing to investigate whether any potential evidence would support such a motion. Collins's reliance on *Espinosa-Hernandez* is misplaced because, in that case, the defendant had moved for a new trial based on new evidence that a government agent, who testified against the defendant, had been indicted for serious offenses involving dishonesty. *See Espinosa-Hernandez*, 918 F.2d at 913-14. In contrast, Collins has not moved for a new trial based on newly discovered evidence because he appears to concede that the allegations in Castaneda's letter, standing alone, were insufficient to warrant such a motion. Although Collins now asserts that he should also be permitted to question Suarez at an evidentiary hearing, he provides no explanation for why he has been unable to question Suarez regarding whether the claims about Suarez in Castaneda's letter are true.

14

Regardless, even if Collins had filed a Rule 33 motion, he was not entitled to a hearing because his alleged new evidence was merely impeaching and it would have been unlikely to produce a different result at trial. *See Jernigan*, 341 F.3d at 1287. Castaneda's letter suggests that he might testify that he heard from Suarez, a non-testifying inmate, that Banos, another inmate, testified falsely. However, even assuming that such testimony would have been admissible for impeachment, Banos's testimony was corroborated by other evidence. Specifically, Bernal and Banos both testified regarding the drug transactions between Collins and Betancourt, and Collins has not alleged that Bernal testified falsely. Notably, both Bernal and Banos testified that they cooperated with the government in an attempt to receive a reduced sentence or other benefits, and the jury could have rejected their testimony on that basis. For the foregoing reasons, we affirm Collins's convictions

**AFFIRMED.**