[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13320

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY MICHAEL D'AMICO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cr-80179-JIC-1

_____

_____

No. 21-10752

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTHONY MICHAEL D'AMICO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cr-80179-JIC-1

_____

Before WILSON, NEWSOM, and BLACK, Circuit Judges.

PER CURIAM:

Anthony D'Amico appeals (1) the district court's denial of his motion for a new trial and an evidentiary hearing following his

convictions for wire fraud and money laundering, based on *Giglio* and *Brady*[1] violations and on newly discovered evidence that a Government witness was under investigation for fraud, under Fed. R. Crim. P. 33; (2) the court's determination the loss amount exceeded $2,700,000; (3) the court's failure to *sua sponte* order a mistrial because a juror might have seen a defense witness get arrested after testifying; and (4) the court's order of restitution without a jury finding. After review, we affirm the district court.

## I. MOTION FOR A NEW TRIAL

*A.  Giglio*

To prove a *Giglio* violation—which is a subset of *Brady* violations—the defendant must show: "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material *i.e.*, that there is any reasonable likelihood that the false testimony could have affected the judgment." *United States v. Stein*, 846 F.3d 1135, 1147 (11th Cir. 2017) (quotation marks omitted).

D'Amico's *Giglio* claim fails because, regardless of materiality, D'Amico's motion for a new trial did not explain how Fernando Mendez's fraud resulted in Mendez's testimony being false, and he did not identify any specific statements by Mendez that were allegedly false. *See id.* Based on the argument D'Amico made to the

---

[1] *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963).

district court in his motion for a new trial, the court did not abuse its discretion by denying his *Giglio* claim. *See United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002) (reviewing a district court's denial of a Rule 33 motion for a new trial, including those where the motion is based on a *Brady* or *Giglio* violation or newly discovered evidence, for an abuse of discretion).

B. Brady

In a criminal proceeding, the Due Process Clause of the Fifth Amendment requires the government to produce all evidence, upon request, that is favorable to the accused. *Brady*, 373 U.S. at 87. To establish a *Brady* claim, a defendant must show: (1) the government possessed evidence favorable to the defendant, including impeachment evidence; (2) the defendant did not possess the evidence, nor could he have obtained it himself with any reasonable diligence; (3) the government suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists the outcome of the proceedings would have been different. *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). Evidence is material if there is a reasonable probability that a different result would have occurred had the evidence been disclosed. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

The district court did not abuse its discretion by denying D'Amico's *Brady* claim. When Mendez testified and the jury returned its verdict on November 7, 2019, the only information that could have been known to the Government about Mendez was that a subpoena had been drafted, but had not been served, for

Mendez Digital as part of the McNeal case. Thus, the only thing the Government could have disclosed to D'Amico would have been that Mendez's company was somehow related to the McNeal case. D'Amico would not have been able to cross-examine Mendez about the subpoena, or the health care fraud, because Mendez would not have known about either at the time he testified. D'Amico's arguments that Mendez somehow knew about the McNeal case and would have understood he was under investigation for health care fraud at the time of his testimony is speculative, and this speculation is not enough to support his arguments that he would have presented a more robust defense and attacked Mendez's credibility.

Additionally, the Government had a strong case against D'Amico. For example, Alan Redmond testified D'Amico got him to switch from buying leads from Exact Media Match (EMM) to Fuel Avenue. Soyoung Ham testified that D'Amico's Invoca log-in credentials were logged in at the time and on the page where the direct inward dial (DID) numbers for eHealth, VelaPoint, and HII were changed. Nicholas Karabetsos testified that D'Amico paid and registered the ehealthinsuranceservice.com e-mail domain, which was listed in Invoca as eHealth's contact information despite Brian Taylor's testimony that it had a different e-mail domain. These examples, among many others, combined with the jury's ability to believe that the opposite of D'Amico's own testimony was true, shows the court did not abuse its discretion by determining the information about Mendez was not material. *See United*

*States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (stating when a defendant takes the stand and testifies in his own defense, the jury may disbelieve his testimony, and he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true).

Next, D'Amico cannot show that, had the Government disclosed information about Mendez, the result of his sentencing would have been different. When D'Amico was sentenced on August 25, 2020, the only thing the Government would have known about Mendez was that a criminal information alleging health care fraud was filed against him a month prior. D'Amico argues this information would have somehow affected the court's calculation of the loss amount and its decision to impose an enhancement for obstructing justice but does not explain how it would have affected it, and he did not explain how in his motion for a new trial. Thus, D'Amico does not show the court abused its discretion by determining the result of his sentencing would not have been different if he had known that Mendez had been indicted for health care fraud.

## C. Rule 33

To justify the grant of a new trial under Fed R. Crim. P. 33 based on newly discovered evidence, a movant must satisfy four elements: "(1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material, and not merely cumulative or impeaching; (3) the evidence must be such that it will probably produce an

acquittal; and (4) the failure to learn of such evidence must be due to no lack of due diligence on the part of the defendant." *United States v. Sjeklocha*, 843 F.2d 485, 487 (11th Cir. 1988).

D'Amico cannot satisfy the materiality element of his *Brady* claim, which means he also cannot satisfy Rule 33's materiality element. These tests share a common materiality element that addresses what effect the withheld exculpatory evidence or newly discovered evidence had on the defendant's case. In order of the difficulty of meeting these materiality elements, Rule 33's materiality standard is more difficult to prove than *Brady's*. *Compare Sjeklocha*, 843 F.2d at 487 (stating Rule 33 evidence must probably produce an acquittal), *with Hansen*, 262 F.3d at 1234 (stating *Brady* standard is whether a reasonable probability exists that the outcome of the proceedings would have been different).

## D. Evidentiary Hearing

Lastly, the district court did not abuse its discretion by denying D'Amico's motion for an evidentiary hearing. *See United States v. Isaacson*, 752 F.3d 1291, 1308 (11th Cir. 2014) (reviewing the denial of a motion for an evidentiary hearing for an abuse of discretion). Motions for a new trial are typically decided without an evidentiary hearing, and D'Amico's allegations did not require an evidentiary hearing. *See United States v. Hamilton*, 559 F.2d

1370, 1373 (5th Cir. 1977)[2] (explaining motions for new trial are ordinarily decided without an evidentiary hearing, but hearings are appropriate for allegations of jury tampering, prosecutorial misconduct, or a third-party confession); *United States v. Espinosa-Hernandez*, 918 F.2d 911, 913-14 (11th Cir. 1990) (allowing an evidentiary hearing where it was discovered that a government agent who testified was indicted for making false statements and distributing cocaine because it involved "serious and disturbing breaches of the public trust").

Accordingly, we affirm the district court's denial of D'Amico's motion for a new trial based on Rule 33, *Brady*, and *Giglio*, and its denial of D'Amico's motion for an evidentiary hearing.

## II. LOSS AMOUNT

The government has the burden to prove the losses attributed to the defendant by a preponderance of the evidence. *See United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015). Loss is calculated as the greater of actual loss or intended loss. U.S.S.G. § 2B1.1, comment. (n.3(A)). Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1, comment. (n.3(A)(i)).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

The court did not clearly err by determining D'Amico caused a loss amount of $2,700,000.  *See Cavallo*, 790 F.3d at 1232 (reviewing a district court's determination of the loss amount for clear error).  Jeremy Attick, All Web Leads' (AWL) vice president of business development and former vice president of sales, testified that EMM lost approximately $3,000,000 in business based on the rerouted leads, and Jessica Lopez, AWL's director of finance and CPA, testified that during her due diligence of AWL's acquisition of EMM she discovered eHealth, VelaPoint, and HII each had outstanding invoices and the total amount lost was $2,767,000.  Because the court stated it relied on Lopez's testimony when determining the loss amount, it did not clearly err by finding the Government proved the loss amount by a preponderance of the evidence.

Even if these figures are hypothetical, the guidelines permit the actual loss amount to be a reasonable estimate of the loss.  *See id.* (stating the guidelines do not require that the sentencing court make a precise determination of loss, and a sentencing court need only make a reasonable estimate of the loss, given the available information).  Accordingly, the district court did not clearly err by determining the Government proved the loss amount by a preponderance, and we affirm.

## III.  MISTRIAL

Plain error review applies because D'Amico did not object on this basis in the district court.  *See United States v. Nash*, 438 F.3d 1302, 1304 (11th Cir. 2006) (explaining issues raised

for the first time on appeal are reviewed for plain error).  Even if it was erroneous for the court to not *sua sponte* grant a mistrial because one juror might have seen Steven Harbison get arrested, that error would not be plain because no precedent supports that proposition.  *See United States v. Lange*, 862 F.3d 1290, 1296 (11th Cir. 2017) (stating "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it").  Thus D'Amico cannot meet the plain error standard, and we affirm.

## IV.  RESTITUTION

*Apprendi* held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  *Apprendi* does not apply to restitution orders because the restitution statute, 18 U.S.C. § 3663, does not have a prescribed statutory maximum.  *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006).  *Southern Union* held that *Apprendi* applies to criminal fines, but did not address restitution.  *Southern Union Co. v. United States*, 567 U.S. 343, 350 (2012).

Plain error applies because D'Amico did not raise an *Apprendi* issue when he objected to the restitution amount.  Even if it was erroneous for the court to order restitution without a jury finding, any error would not be plain.  Under *Dohrmann*, *Apprendi* does not apply to restitution orders.  The court would have had no indication that *Southern Union* abrogated *Dohrmann* because

*Southern Union* did not address restitution.  Thus, D'Amico cannot meet the plain error standard and we affirm.  *See Lange*, 862 F.3d at 1296.

**AFFIRMED.**