NOT FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11569
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENZIL OLAJUWON STEWART,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:24-cr-14058-DMM-2
_____

_____

No. 25-11888
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DENZIL OLAJUWON STEWART,

*Defendant-Appellant.*

—————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:24-cr-14058-DMM-2

—————————————

Before NEWSOM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Denzil Stewart appeals the denial of his motion for new trial based on newly discovered evidence and his request for an evidentiary hearing, pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  For the reasons discussed below, we conclude that the district court did not abuse its discretion in denying the motion because the evidence constituted cumulative impeachment that would not have changed the outcome of the case, and we affirm.

**I.**

In 2024, a grand jury returned a superseding indictment charging Stewart and his co-defendant Carlos L. Avila with four counts: one count of conspiracy to possess with intent to distribute a controlled substance (50 grams or more of methamphetamine), in violation of 21 U.S.C. § 846 (Count 1); and three counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1)

(Counts 2–4).  Avila pled guilty to all counts, cooperated with the government, and received a 97-month sentence.

Stewart proceeded to trial.  The evidence presented at trial established that Stewart was a methamphetamine supplier.  Tyrell Bennett, a cooperating witness for the DEA, testified that Stewart had been one of his sources for methamphetamine in April 2023, delivering the drugs in plastic grocery bags.  A pole camera outside of Stewart's Vero Beach, Florida residence captured Avila, Stewart's alleged co-conspirator, arriving and departing within ninety seconds on December 12, 2023, after which Avila sold six ounces of methamphetamine packaged in grocery bags bearing both men's fingerprints to a confidential source used by the DEA to make controlled purchases from Avila.

On December 28, 2023, DEA Agent Cory Tomblin, the lead investigator targeting local methamphetamine traffickers, and Detective John Pollacek of the Indian River County Sheriff's Office recorded Stewart driving to Avila's home, lowering his window, and engaging in a hand-to-hand exchange consistent with a drug transaction.  Avila then immediately sold ten ounces of methamphetamine in a Dillard's bag—again bearing Stewart's fingerprint—to the confidential source.

Avila testified that, on January 24, 2024, he ordered methamphetamine from Stewart (delivered by Stewart's brother) and sold ten ounces in a Christmas gift bag to undercover Detective Jorge Godinez of the Indian River County Sheriff's Office.  Avila also testified on direct examination that he was a convicted drug

trafficker who was testifying in hope of a lighter sentence. This pattern of pole-camera footage, direct agent observations, finger-print evidence on the outer packaging, and Avila's testimony that Stewart was his supplier on all three dates formed the core of the government's proof that Stewart conspired with Avila to distribute methamphetamine.

The jury returned a split verdict of guilty on Counts 1 and 3, and not guilty on Counts 2 and 4. After this verdict was rendered, but before a final sentence was imposed, the government provided Stewart with a new police report from the Indiana River County Sheriff's Office regarding Avila. In relevant part, the report re-vealed that a confidential source had purchased cocaine from Avila in early February 2025—immediately before the trial in the instant case and while Avila was out on federal bond. It further stated that the confidential source had known Avila for about three years and had bought drugs from him once or twice a month.

Between Stewart's trial and sentencing, he moved for a new trial under Fed. R. Crim. P. 33 based on "newly discovered evi-dence." Stewart argued that this report proved Avila committed perjury at least three times during the trial and insisted that a new trial was necessary. He requested an evidentiary hearing to resolve the motion.

At sentencing, the district court considered the motion for a new trial. The district court noted that police officers were the pri-mary witnesses at trial and that the untruthful testimony was in

response to questions on cross-examination, and that the jury knew they were dealing with a drug dealer.

After sentencing, the district court denied the motion for a new trial, ruling that Avila's alleged misstatements were merely impeachment evidence and cumulative and that his denial about still selling drugs made no difference to the outcome of the trial. The district court further explained that "the proffered new evidence would not produce a different result" because the "Government's evidence included direct observations by law enforcement officers of interactions between Stewart and Avila" which were further corroborated by fingerprint evidence and the testimony of Tyrell Bennett.

## II.

We review the denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. *United States v. Beasley*, 160 F.4th 1199, 1204–05 (11th Cir. 2025). We also review the denial of an evidentiary hearing on that motion for abuse of discretion. *Id.* at 1205.

## III.

On appeal, Stewart argues that the district court abused its discretion in denying his Rule 33 motion for a new trial without conducting an evidentiary hearing. A district court may grant a motion for a new trial based on newly discovered evidence "if the interest of justice so requires." Fed. R. Crim. P. 33(a), (b)(1). Motions for new trial based on newly discovered evidence are "highly disfavored" in the Eleventh Circuit and should be granted only with

great caution. *Beasley*, 160 F.4th at 1205. To succeed on a Rule 33 motion, the defendant must prove that (1) the evidence was discovered after trial, (2) the failure to discover the evidence was not due to a lack of diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material, and (5) the evidence would probably produce a different result at trial. *Id*. "The failure to satisfy any one of these elements is fatal to a motion for a new trial." *United States v. Thompson*, 422 F.3d 1285, 1294 (11th Cir. 2005).

A motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing, especially when the district court judge who rules on the motion also presided over the case from its inception and heard and evaluated the testimony of the witnesses whose credibility is challenged. *United States v. Markovich*, 95 F.4th 1367, 1379–80 (11th Cir. 2024). Evidentiary hearings on motions for new trial are usually reserved for "unique situations" typically involving allegations of jury tampering, prosecutorial misconduct, or third party confessions. *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977).

Here, we conclude that the district court did not abuse its discretion in denying Stewart's Rule 33 motion. As a threshold matter, the district court judge below oversaw the entire case from its inception before ruling on Stewart's motion. As such, he was "well qualified" and had all the evidence necessary to decide the motion with just affidavits. *See Markovich*, 95 F.4th at 1380. Additionally, there are no allegations of "unique situations" in this case

25-11569                Opinion of the Court                7

that would justify an exception to this general rule. *See Hamilton*, 559 F.2d at 1373.

Regarding the merits of the district court's denial of Stewart's Rule 33 motion, we also conclude that the district court did not abuse its discretion in denying Stewart's Rule 33 motion as Stewart failed to show how the police report was more than merely cumulative or impeaching evidence against Avila and that its admission would have returned a different result.

In support of his argument, Stewart relies on *United States v. Espinosa-Hernandez*, 918 F.2d 911 (11th Cir. 1990). We are not persuaded. In *Espinosa-Hernandez*, we held that the district court abused its discretion when it denied a Rule 33 motion for new trial without first conducting an evidentiary hearing. *Id.* at 913. In that case, a Customs Service Agent, David Urso, oversaw a sting operation that led to Espinosa's indictment. *Id.* at 912. Urso was the sole witness to testify before the grand jury, and it was undisputed that he made false statements to the grand jury and in his affidavit for the criminal complaint. *Id.* at 913. At trial, Espinosa argued that the testimony of a confidential informant was essential to his defense, but the informant happened to be under Urso's supervision. *Id.* Based on Urso's representation at trial, the district court found that the informant was unable to testify. *Id.* After Espinosa was convicted, he learned that Urso had been indicted for making false statements on his Customs Service Agent application. *Id.* Espinosa moved for a new trial on this new evidence and further alleged that

Urso was under investigation for his participation in a different informant's escape from federal custody. *Id.* We observed that the gravity of Urso's false statements revealed after trial could implicate prosecutorial misconduct based on what the government knew of at the time. *Id.* at 913–14. Additionally, the falsity of Urso's statements and subsequent impeaching of his truthfulness was more than "mere impeachment" because Urso's representations directly resulted in the unavailability of a confidential informant essential to Espinosa's defense at trial. *Id.*

Here, unlike in *Espinosa-Hernandez*, there was also no allegation that any witness was withheld from Stewart based on Avila's misrepresentations, or that there was any prosecutorial misconduct. Additionally, although Avila was a key witness for the counts related to the methamphetamine purchases where Stewart was never seen physically (Counts 2 and 4), the jury's verdict of not guilty on those counts demonstrated that Avila was already deemed an uncredible witness without the police report. Avila also testified to being a convicted drug trafficker who was testifying at trial for a lighter sentence.

Moreover, the evidence which supported the jury's guilty verdicts on Counts 1 and 3—other than Avila's testimony—was substantial, namely the law enforcement agents who positively identified Stewart rolling down his window next to Avila's car on December 28 right before Avila gave a Dillard's bag full of methamphetamine to a purchaser. Agent Tomblin's and Detective Pol-

lacek's testimony coupled with that of Bennett who testified generally that Stewart was a drug dealer, Stewart's prior drug trafficking conviction, and Stewart's fingerprints on the outer packaging of the methamphetamine was likely sufficient on its own to sustain the conviction as to Counts 1 and 3.  Where alleged conduct was unsupported by officer testimony and partially unsupported by fingerprint evidence (Counts 2 and 4), the jury acquitted Stewart.  As such, the police report demonstrating Avila's perjured statements would serve only to impeach his credibility further in a cumulative fashion.

## IV.

For these reasons, we affirm the district court's denial of Stewart's motion for a new trial.

**AFFIRMED.**